UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHELDON MILLER, BRUCE SEYBURN
ARTHUR WIRTH and JAMES RANDOLPH,

        Plaintiffs,

v.

LAIDLAW & COMPANY (UK) LTD.,
an English corporation, HUGH REGAN,
TED FOWLER, JASON RUSSO, TODD
CIRELLA, STEPHEN GIANNTONIO and
PETER SILVERMAN,

        Defendants.

Case No.11-cv-12086
Hon.

_____/

MAYER MORGANROTH (P17966)
JEFFREY B. MORGANROTH (P41670)
DANIEL E. HAROLD (P61841)
MORGANROTH & MORGANROTH, PLLC
Attorneys for Plaintiffs
344 North Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
(248) 864-4000
_____/

**COMPLAINT AND JURY DEMAND**

        NOW COME Plaintiffs, Sheldon Miller, Bruce Seyburn, Arthur Wirth and James Randolph,

by and through their attorneys, Morganroth and Morganroth, PLLC, and hereby state their Complaint

against Defendants, Laidlaw & Company (UK) Ltd., an English corporation, Hugh Regan, Ted

Fowler, Jason Russo, Todd Cirella, Stephen Gianntonio and Peter Silverman, as follows:

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

## JURISDICTION AND PARTIES

1.     Plaintiff, Sheldon Miller ("Miller"), is a resident of the County of Oakland, State of Michigan.

2.     Plaintiff, Bruce Seyburn ("Seyburn"), is a resident of the County of Oakland, State of Michigan.

3.     Plaintiff, Arthur Wirth ("Wirth"), is a resident of the County of Lake, State of Illinois.

4.     Plaintiff, James Randolph ("Randolph"), is a resident of the County of Maricopa, State of Arizona.

5.     Defendant, Laidlaw & Company (UK) Ltd. ("Laidlaw"), is an English corporation with offices in the United States, and has conducted business in the County of Oakland, State of Michigan at all relevant times hereto.

6.     Defendant, Hugh Regan ("Regan"), is a resident of the State of New York who has conducted business in the County of Oakland, State of Michigan, at all relevant times hereto.

7.     Defendant, Ted Fowler ("Fowler"), is a resident of the State of New York who has conducted business in the County of Oakland, State of Michigan, at all relevant times hereto.

8.     Defendant, Jason "Jay" Russo ("Russo"), is a resident of the State of New York who has conducted business in the County of Oakland, State of Michigan, at all relevant times hereto.

9.     Defendant, Todd Cirella ("Cirella"), is a resident of the State of New York who has conducted business in the County of Oakland, State of Michigan, at all relevant times hereto.

10.     Defendant, Stephen Gianntonio ("Gianntonio"), is a resident of the State of New York who has conducted business in the County of Oakland, State of Michigan, at all relevant times hereto.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE  200
BIRMINGHAM, MI  48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY  10017
(212) 586-5905

11.     Defendant, Peter Silverman ("Silverman"), is Laidlaw's Senior Executive Officer and Managing Director, and has conducted business in the County of Maricopa, State of Arizona at all times relevant hereto.

12.     This action alleges a breach of contract and separate tortious conduct committed by Defendants, and the consequences resulting therefrom, which occurred and continue to occur in the County of Oakland, State of Michigan.

13.     Jurisdiction is appropriate pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest, costs and attorney fees.

14.     Venue is appropriate pursuant to 28 U.S.C. §1391(a).

## GENERAL ALLEGATIONS

I.     **INTRODUCTION.**

15.     Defendant, Laidlaw, is a full-service investment banking and brokerage firm offering investment opportunities to private and public institutions as well as high net worth individuals.

16.     As a full-service investment banking and brokerage firm, Laidlaw's business is driven by commissions and/or other compensation/benefits that Laidlaw generates from: (a) Laidlaw's clients whose investments are managed by Laidlaw; and (b) the companies that, through Laidlaw, receive Laidlaw's clients' investments.  In other words, Laidlaw is compensated on both ends of transactions -- by its clients on one end and the companies in which Laidlaw invests its clients' money on the other end.

17.     Plaintiffs, Miller, Seyburn, Wirth and Randolph, are clients of Laidlaw who invested millions of dollars in various companies through Laidlaw, $2.5 million of which was invested by Laidlaw in a business venture to open Hooters® restaurants throughout Australia and New Zealand.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

18.     Plaintiffs made their substantial investments based upon a series of false representations by Laidlaw and the other Defendants misrepresenting the nature and prospects of Plaintiffs' investments for the purpose of inducing Plaintiffs' substantial investments which resulted in a windfall of commissions and/or other compensation and/or benefits to Laidlaw and its individual Defendant employees from Plaintiffs' investments, both from the investments themselves and from the companies in which Plaintiffs' investments were placed.

## II.     PLAINTIFFS' INVESTMENTS IN THE HOOTERS® BUSINESS VENTURE.

19.     In 2004 and 2005, Australian Enterprises, L.P. purchased the exclusive franchise rights for Hooters® restaurants in Australia and New Zealand, respectively, from Hooters of America, Inc.

20.     Australian Enterprises, L.P. subsequently entered into a management agreement with South Pacific Partners, Ltd. ("South Pacific Partners") to operate the Hooters® restaurants in Australia and New Zealand.  South Pacific Partners then formed South Pacific Management, LLC to serve as the General Partner of South Pacific Partners.

21.     From approximately May of 2006 through approximately February of 2008, South Pacific Partners obtained millions of dollars in working capital for its supposed Hooters® restaurant operation through private equity offerings and bridge loans.

22.     As set forth below, Plaintiffs invested in South Pacific Partners through such private offerings and bridge loans via Laidlaw on the basis of false assurances and representations from Laidlaw and its Defendant employees/officers.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE  200
BIRMINGHAM, MI  48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ⁿᵈ STREET
10ᵀᴴ FLOOR
NEW YORK, NY  10017
(212) 586-5905

A.    SOUTH PACIFIC PARTNERS' PRIVATE OFFERINGS AND PLAINTIFFS' INVESTMENTS.

23.    On or about May 15, 2006, South Pacific Partners issued a private offering for 25% of its partnership to raise $7 million for the stated purpose of supporting the opening and operation of at least 30 Hooters® restaurants in Australia and New Zealand over the ensuing five years.

24.    Plaintiffs, Miller, Seyburn and Randolph, each invested in South Pacific Partners based upon this private offering as follows.

25.    In July of 2006, Randolph was contacted by Defendant, Silverman, Laidlaw's Senior Executive Officer and Managing Director who served as Randolph's investment broker/point-of-contact at Laidlaw, to invest in South Pacific Partners.

26.    Silverman insisted to Randolph that South Pacific Partners was a great investment opportunity because Michael Flinn ("Flinn"), the principal owner and manager of South Pacific Partners and South Pacific Management, had franchise rights to all Hooters® restaurants in Australia and New Zealand.  Silverman further represented that one Hooters® restaurant had just opened in Australia and was performing extremely well from a financial and patronage standpoint and that Flinn had immediate plans to open at least three other restaurants in Australia and possibly more in New Zealand.

27.    Silverman contacted Randolph on an almost daily basis during July of 2006, each time reiterating to Randolph that South Pacific Partners was a great investment opportunity.

28.    Based upon Silverman's persistent, repeated representations, Randolph agreed to invest $100,000 in South Pacific Partners pursuant to South Pacific Partner's May 15, 2006 private offering on or about July 24, 2006.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

29.     With respect to Miller, Miller was contacted by Defendant, Russo, Laidlaw's Senior Managing Member and Co-Head of Product Sales, in or around the latter half of 2006 or early 2007 to invest in South Pacific Partners.

30.     Russo represented to Miller that investing in South Pacific Partners was a great investment, and Russo further represented and assured Miller that Miller would be bought out at 3.7 times Miller's investment in South Pacific Partners.

31.     Based upon Russo's representations and assurance, Miller invested $250,000 in South Pacific Partners through South Pacific Partner's May 15, 2006 offering.

32.     In or around early February of 2007, Plaintiff, Seyburn, was contacted by Cirella, Laidlaw's Senior Managing Director and Head of International Business Development who served as Seyburn's investment broker/point-of-contact at Laidlaw.

33.     During their telephone conversation, Cirella told Seyburn during that South Pacific Partners was a huge investment and business opportunity.  In response, Seyburn stated that he was concerned that South Pacific Partners might run out of working capital in establishing the Hooters® restaurants to which Cirella responded that a $25 million non-refundable investment was being put up in South Pacific Partners.

34.     Based upon Cirella's advice, recommendation and assurance in the non-refundable $25 million investment, Seyburn responded to South Pacific Partner's May 15, 2006 offering on or about February 6, 2007 with an investment of $150,000.

35.     Later that month, Seyburn was informed by Laidlaw that South Pacific Partners' May 15, 2006 offering was full, but that South Pacific Partners was issuing a second private offering dated February 27, 2007 to raise an additional $1.12 million in working capital.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

36.     On or about March 13, 2007, Seyburn's Subscription Agreement was signed confirming Seyburn's $150,000 investment in South Pacific Partners.

**B.      WIRTH'S AND MILLER'S BRIDGE LOANS TO SOUTH PACIFIC PARTNERS.**

37.     In or around early October of 2007, Wirth and Miller were each contacted by Laidlaw to provide short-term bridge loans to South Pacific Partners so that South Pacific Partners could close on a deal to acquire the assets of a company, R.M.D. Corp., which was the oldest franchisee of Hooters of America, Inc. owning approximately 39 Hooters® restaurants throughout the Midwest. Both Wirth and Miller were specifically told by Laidlaw that investing in South Pacific Partners was a great investment opportunity.

38.     With respect to Wirth, Wirth was contacted by Defendants, Fowler, Regan, Russo and Gianntonio, in early October of 2007 asking Wirth to provide a bridge loan in the amount of $500,000 to South Pacific Partners with a loan maturity date of April 1, 2008, interest at the rate of around 9% and a warrant to purchase an ownership interest in South Pacific Partners.  Wirth then engaged in a series of telephone conversations with Gianntonio in early October of 2007 regarding their investment request.

39.     During Wirth's telephone conversations with Gianntonio, Gianntonio represented to Wirth that investing in South Pacific Partners was a great investment opportunity and that South Pacific Partners had no debt, thus reinforcing the representation that investing in South Pacific Partners was a great investment opportunity.

40.     Based upon Giannantonio's representations, Wirth wired $500,000 to South Pacific Partners on or about October 9, 2007.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

41.     On or about October 12, 2007, Wirth and South Pacific Partners officially executed a Note and Warrant Purchase Agreement recognizing Wirth's $500,000 as a bridge loan to South Pacific Partners in exchange for a Promissory Note and Warrant from South Pacific Partners.

42.     The Promissory Note provided that Wirth's principal was due on the earlier of April 1, 2008 or certain events affecting the operation and/or status of South Pacific Partners (i.e., a change of ownership in South Pacific Partners, the disposition of all or substantially all of South Pacific Partners' assets or the liquidation, dissolution or winding up of South Pacific Partners). The Promissory Note further provided that interest would accrue at 9% per annum, compounded annually. In addition, the Promissory Note provided that all unpaid principal and accrued interest as of the due date would bear interest from and after the due date at the rate of 18% per annum, compounded annually.

43.     With respect to the Warrant, Wirth was entitled to purchase 1.65 partnership units of South Pacific Partners for the amount of $495,495.49. The Warrant was valid until the earlier of September 30, 2012 or certain events affecting the operation and/or status of South Pacific Partners (i.e., a change of ownership in South Pacific Partners or the disposition of all or substantially all of South Pacific Partners' assets).

44.     As with Wirth, Miller was contacted by Laidlaw in early October of 2007 to provide a bridge loan in the amount of $500,000 to South Pacific Partners under the same terms and conditions as Wirth. Specifically, Miller had at least one telephone conversation with Defendants, Russo and Cirella, in early October of 2007 asking Miller to provide a bridge loan in the amount of $500,000 to South Pacific Partners with a loan maturity date of April 1, 2008, interest at the rate of around 9% and a warrant to purchase an ownership interest in South Pacific Partners on the basis that this was a great investment opportunity.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

45.     Based upon Russo's and Cirella's representations, Miller executed a Note and Warrant Purchase Agreement with South Pacific Partners in early October of 2007 whereby Miller loaned $500,000 to South Pacific Partners in exchange for a Promissory Note and Warrant from South Pacific Partners containing the exact same terms and provisions as the Note and Warrant Purchase Agreement between Wirth and South Pacific Partners.

46.     Following the execution of the Note and Warrant Purchase Agreement between Wirth and South Pacific Partners, Russo and Gianntonio continued to represent to Wirth in more than one dozen telephone conversations from mid-October of 2007 through early February of 2008 that Wirth's bridge loan was a solid investment and on track to be timely repaid.

47.     On or about February 6, 2008, Robert Hersch ("Hersch"), an investment broker representing South Pacific Partners, contacted Wirth proposing a new deal.  Hersch proposed that Wirth provide another bridge loan of $500,000 to South Pacific Partners and moving the maturity date on Wirth's initial bridge loan two weeks to April 15, 2008 to expedite the R.M.D. Corp. asset acquisition closing in exchange for: (1) increasing the interest rate on Wirth's initial Promissory Note to 12%; (2) maintaining a 12% interest rate and April 15, 2008 maturity date on Wirth's additional bridge loan; and (3) Wirth receiving 1 unit of the South Pacific Partners partnership in lieu of having to exercise his Warrant.

48.     On or about February 13, 2008, Fowler, Gianntonio, Russo and Regan of Laidlaw contacted Wirth and represented to Wirth that Wirth should provide the additional $500,000 bridge loan to South Pacific Partners because it was a good investment and that Wirth's total $1 million investment would be repaid in full by April 8, 2008 which would be one week earlier than the proposed April 15, 2008 loan maturity date.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE  200
BIRMINGHAM, MI  48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY  10017
(212) 586-5905

49.     Based upon Fowler's, Gianntonio's, Russo's and Regan's representations, Wirth provided the additional $500,000 bridge loan to South Pacific Partners on or about February 14, 2008.

50.     Similar to Wirth, Miller was contacted via e-mail by Russo's and Cirella's office at Laidlaw on or about February 6, 2008.

51.     The e-mail stated that South Pacific Partners was offering Wirth and Miller an opportunity to improve their positions with South Pacific Partners.  The e-mail then specified that South Pacific Partners was seeking additional bridge loans in the amount of $500,000 each from Wirth and Miller (for an aggregate of $1 million) for the purpose of expediting the R.M.D. Corp. asset acquisition closing.

52.     The e-mail further stated that, in exchange for the additional loans from Wirth and Miller, South Pacific Partners would: (1) increase the interest rates on Wirth's and Miller's Promissory Notes from 9% to 12% retroactive to the October 2007 dates of the Promissory Notes while; and (2) Wirth and Miller would each receive 1 unit of the South Pacific Partners partnership in lieu of having to exercise their Warrants.  Attached to the e-mail was the Press Release regarding South Pacific Partners' agreement to purchase the assets of R.M.D. Corp.

53.     Because April 15, 2008 was the deadline for income tax returns and Miller needed some of the requested $500,000 to pay other commitments, Miller hesitated to agree to the offer until Russo verbally guaranteed to Miller during a telephone conversation that occurred between February 6, 2008 and February 8, 2008 that Miller's principal bridge loans of $1 million would be fully repaid on April 15, 2008.

54.     Thereafter, Miller accepted the offer on or about February 8, 2008 and forwarded the additional $500,000 to South Pacific Partners.  Miller and South Pacific Partners entered into a

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42nd STREET
10th FLOOR
NEW YORK, NY 10017
(212) 586-5905

Subscription Agreement, Promissory Note and Securities Purchase Agreement containing the terms set forth in the February 6, 2008 e-mail to Miller on about that date (February 8, 2008).

55.     Following Wirth's and Miller's additional bridge loans to South Pacific Partners, Russo and Gianntonio continued to represent to Wirth that Wirth's investment in South Pacific Partners was a solid investment that would soon be repaid in full.

56.     Despite the representations that were made to Wirth and Miller to induce their bridge loans, the April 15, 2008 maturity date on their Promissory Notes passed, and South Pacific Partners failed to repay Wirth's and Miller's bridge loans, let alone the interest on such loans.

57.     Thereafter, Wirth engaged in several telephone conversations with Gianntonio, Fowler and Regan from about April 17, 2008 through early August of 2008 in order to find out when his bridge loans would be repaid.  Among such telephone conversations, Wirth was told by Gianntonio in mid-April of 2008 that Gianntonio was looking into South Pacific Partners to locate Wirth's money.  Fowler likewise told Wirth in early May of 2008 that Fowler and Regan were looking into Wirth's South Pacific Partners investment.  In mid-May of 2008, Regan told Wirth that Wirth should be receiving his money any day and, in early June of 2008, Gianntonio told Wirth that Gianntonio was meeting with Hersch and Regan about Wirth's investment in South Pacific Partners.

58.     On or about August 7, 2008, Gianntonio sent Wirth a letter stating that Gianntonio had spoken with Hersch and Regan and that, due to the delay in repaying Wirth's bridge loans and interest thereon, Gianntonio, Hersch and Regan were sending a letter to Flinn, South Pacific Partners and R.M.D. Corp. demanding that Wirth's entire principal of $1 million be repaid with 18% interest from October 1, 2007 through the anticipated August 29, 2008 closing date on the R.M.D. Corp. acquisition.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE  200
BIRMINGHAM, MI  48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY  10017
(212) 586-5905

59.     As for Miller, after Miller's principal and interest were not repaid by April 15, 2008, Miller contacted Russo and/or Cirella in mid-April of 2008 and was told that he would be paid for sure on June 1, 2008 after the anticipated closing of the R.M.D. Corp. acquisition.  However, on or about May 31, 2008, Miller was told by Russo and/or Cirella during a telephone conversation that Miller would not be paid on June 1, 2008.  Russo and/or Cirella then promised Miller that Miller would be paid at the close of business on June 27, 2008 when the South Pacific Partners' books would be closed in connection with the R.M.D. Corp. acquisition.

60.     As the June 27, 2008 date approached, Miller was told by Russo and/or Cirella during a telephone conversation in the latter part of June of 2008 that it would take a few days to send the money but that Miller could expect the money by July 5, 2008.  Miller then questioned the July 5th date because that was a Saturday and the Fourth of July weekend. Russo and/or Cirella responded that July 5, 2008 was indeed the date that Miller could expect his money.

61.     In the meantime, South Pacific Partners issued a notice on June 26, 2008 for a special meeting of the partners to be held on July 7, 2008 to vote on proposals recommended by South Pacific Management in connection with the R.M.D. Corp. acquisition, including a proposal to raise an additional $3.5 million and a proposal to execute and deliver a guaranty of third party debt financing obligations expected to be incurred.

62.     As the July 5, 2008 date approached for the repayment of Miller's bridge loans and interest, Miller was told by Russo and/or Cirella during a telephone conversation on July 3, 2008 that the R.M.D. Corp. acquisition closing had been moved to July 18, 2008.

63.     On or about September 4, 2008, Ted Fowler ("Fowler"), the Senior Managing Director and Head of Investment Banking of Laidlaw, held a telephone conference with Wirth and Miller regarding their bridge loans to South Pacific Partners.  Thereafter, Fowler prepared a

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ⁿᵈ STREET
10ᵀᴴ FLOOR
NEW YORK, NY 10017
(212) 586-5905

September 5, 2008 memorandum to Wirth and Miller summarizing Fowler's understanding of the situation based upon his discussion with Wirth and Miller and Fowler's ensuing discussion with Hersch regarding the status of South Pacific Partners and R.M.D. Corp.

64.     Fowler's September 5, 2008 memorandum was forwarded to Wirth, Miller, Russo, Cirella, Gianntonio and Regan with the recommendation that Wirth and Miller enter into a forbearance agreement with South Pacific Partners under terms that would provide Wirth and Miller with various benefits/relief if they held off on collecting their outstanding bridge loans and interest for a term of approximately 90 days -- through December 15, 2008.

65.     Although a forbearance agreement was reached, Wirth's and Miller's investments were never repaid, let alone with the represented interest.

66.     Starting in January 2009, both Wirth and Miller repeatedly demanded that Laidlaw provided them with all of the relevant documents and records concerning their investments through Laidlaw; however, Laidlaw refused to provide any such information to Wirth or Miller.

67.     As for Seyburn, Seyburn sent a letter to Cirella on or about October 8, 2008 demanding that Cirella provide Seyburn with the dates, amounts and descriptions of Seyburn's investments with Laidlaw as well as the prospectus materials for South Pacific Partners/South Pacific Management.  Seyburn, however, was never provided with any substantive information in response to his demand.

68.     Despite Plaintiffs' efforts to obtain the represented return on their investments as well as information concerning their investments in South Pacific Partners, Plaintiffs have been unable to obtain either.

69.     Instead, Plaintiffs have been provided with letters from Flinn of South Pacific Partners and Plaintiffs have discovered press releases suggesting that South Pacific Partners had not

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE  200
BIRMINGHAM, MI  48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ⁿᵈ STREET
10ᵗʰ FLOOR
NEW YORK, NY  10017
(212) 586-5905

acquired R.M.D. Corp. and had lost some, if not all, of its Hooters® restaurant rights in Australia and New Zealand.  In other words, despite the millions upon millions of dollars raised by South Pacific Partners to supposedly own and operate Hooters® restaurants in the Midwest United States, Australia and New Zealand, Laidlaw and South Pacific Partners cannot account for the money they raised or the ownership of the Hooters® restaurants in the Midwest United States, Australia and New Zealand for which the money was raised.

### III.    PLAINTIFFS' OTHER INVESTMENTS THROUGH LAIDLAW.

70.    In addition to South Pacific Partners, Seyburn invested $100,000 in Anpath Group in or around December of 2005, and $100,000 in Baxil in or around July of 2007 based upon the advice and recommendations of Cirella.

71.    Contrary to Cirella's advice and recommendations that Anpath Group and Baxil were great investment opportunities, the value of Seyburn's investments has been lost as the companies are worthless and were never great, let alone viable, investment opportunities.

72.    Wirth invested more than $3.1 million in several companies starting in or around 2006 or 2007 -- Baxil, Patron, Spireline, Wherify, Alfacell Corp., Anpath Group and Fomax -- based upon the advice, recommendations and representations of Laidlaw.

73.    Specifically, Wirth invested $200,000 in Baxil based upon Gianntonio's advice and recommendation to make such investment.  Although Wirth's investment was returned, Wirth never received 50,000 warrants that he was supposed to have received.

74.    Wirth also invested $980,000 in Patron based upon Gianntonio's advice and recommendation to make such investment.  Wirth's investment has been lost.

75.    In early July of 2007, Wirth invested $200,000 in Spireline based upon Fowler's and Gianntonio's advice and recommendations to make such investment.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE  200
BIRMINGHAM, MI  48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY  10017
(212) 586-5905

76.     During a telephone conversation with Fowler and Gianntonio at the end of October of 2007, Wirth was told by Fowler that, although Spireline could not presently stay in business, Wirth could save Spireline with an additional investment.  Fowler then represented to Wirth that Wirth would not only receive a full return on his Spireline investment, but Wirth would also receive an additional $1 million.  Fowler then insisted that Wirth put up the additional investment because it was a "can't miss" opportunity.  Fowler then put Russo and Cirella on the line, and they told Wirth that, if they had the money, they would invest in Spireline.

77.     Thereafter, Wirth invested $250,000 in Spireline in early November of 2007 based upon Fowler's, Russo's and Cirella's representations and assurances.

78.     Near the end of November and early December of 2007, Wirth contacted Fowler and requested to see Spireline's financial reports.  Although Fowler promised to provide the reports to Wirth, Fowler failed to do so.

79.     In mid-January of 2008, Wirth again contacted Fowler to discuss Spireline.  During their conversation, Fowler informed Wirth that he (Fowler) was having problems with Regan, who was managing Spireline.

80.     In mid-April of 2008, Gianntonio contacted Wirth to offer Wirth a supposed deal on Wherify.  Specifically, Gianntonio wanted Wirth to invest $500,000 in Wherify and represented that Wirth would receive 12.5% monthly interest.  Wirth asked Gianntonio if Wherify had any debt and Gianntonio responded in the negative.  Gianntonio then represented to Wirth that Wherify was "one hell of a company," and that Regan was on its board.  Gianntonio then represented to Wirth that Wirth would make millions on his investment.

81.     In mid-May of 2008, Wirth invested $550,000 in Wherify based upon Gianntonio's representations and assurances.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW
———
MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001
———
NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

82.     In early June of 2008, Wirth contacted Regan to find out when he would receive his interest check from Wherify.  Regan responded that he would find out and contact Wirth.  However, Regan failed to contact Wirth to provide such information and Wirth never received any monthly interest payments.

83.     During ensuing telephone conversations between Fowler and Wirth in late July of 2008, Fowler stated that he was trying to find out what was going on with Wirth's interest payments and that Laidlaw had raised $25 million for Wherify prior to Wirth's investment even though Gianntonio had represented to Wirth that Wherify had no debt when Gianntonio induced Wirth to invest in Wherify.

84.     During ensuing telephone conversations between Gianntonio and Wirth in August and early September of 2008, Gianntonio stated that he was confused on the Wherify deal and was trying to reach Regan to discuss the Wherify situation but Regan was not responding to his voicemails.  Wirth then told Gianntonio that Wirth wanted a meeting arranged with Regan and Fowler.

85.     Wirth and his assistant, Rebecca Fuller, met with Regan and Fowler in early October of 2008 in New York.  During that meeting, Regan and Fowler promised Wirth that Wirth would get back everything that he invested plus interest.  Regan and Fowler also represented to Wirth and assured Wirth that Wherify was great investment which led to Wirth purchasing 6 million shares of Wherify at the supposed discounted rate of $200,000.

86.     At the end of October of 2008, Gianntonio informed Wirth during a telephone conversation that Wirth could not sell his Wherify stock for a period of one year.  However, during an ensuing telephone conversation with Regan on or about that same day, Wirth was informed by Regan that Wirth could sell his Wherify stock at any time without restriction.  Gianntonio

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ⁿᵈ STREET
10ᵀᴴ FLOOR
NEW YORK, NY  10017
(212) 586-5905

subsequently admitted to Wirth during a telephone conversation in early November of 2008 that he (Gianntonio) was mistaken in informing Wirth that Wirth's Wherify stock could not be sold for one year. Gianntonio's admission, however, was of no benefit to Wirth as Gianntonio informed Wirth during a telephone conversation at the beginning of December of 2008 that Wherify had no money.

87.     Wirth also invested $306,000 in Alfacell Corp. based upon Gianntonio's advice and recommendation to make such investment. Wirth's investment has been lost.

88.     Wirth also invested $87,847 in Anpath Group based upon Gianntonio's advice and recommendation to make such investment. Wirth's investment has been lost.

89.     Wirth also invested a total of $375,000 in Fomax based upon Gianntonio's advice and recommendation to make such investment. Wirth's investment has been lost.

90.     Starting in or around 2006, Randolph invested more than $1.1 million in various companies based upon the advice and recommendations of Silverman, who pushed and guaranteed investing in each and every one of the companies in a manner similar to the Hooters® investment.

91.     Specifically, Randolph invested $200,000 in Palisades, a data loss prevention company, $225,000 in Home Director, a home security and light automation company, $300,000 in THC-Trek, a health insurance company, $230,000 in Zestra, a female sexual enhancement product company, and $150,000 in Anpath Group, an environmental company.

92.     The value of Randolph's investments of more than $1.1 million in these companies has been lost as these are virtually worthless.

### COUNT I
### FRAUD AND MISREPRESENTATION
**(Miller v. Laidlaw, Russo and Cirella)**

93.     Plaintiff, Miller, hereby incorporates by reference and realleges Paragraphs 1 through 92 of this Complaint as if fully restated herein.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ᴺᴰ STREET
10ᵀᴴ FLOOR
NEW YORK, NY 10017
(212) 586-5905

94.     Laidlaw, Russo and Cirella promised, represented and assured Miller that South Pacific Partners was a great investment and business opportunity.

95.     Laidlaw's, Russo's and Cirella's promises, representations and assurances to Miller that South Pacific Partners was a great investment and business opportunity were false and/or made in reckless disregard of the truth.

96.     Laidlaw, Russo and Cirella promised, represented and assured Miller that South Pacific Partners was a great investment and business opportunity for the purpose of inducing Miller to invest in South Pacific Partners so that Laidlaw, Russo and Cirella could reap the benefits of Miller's investments South Pacific Partners while Miller lost virtually all of his investments in South Pacific Partners.

97.     Miller relied upon Laidlaw's, Russo's and Cirella's promises, representations and assurances to Miller that South Pacific Partners was a great investment and business opportunity and invested in South Pacific Partners based upon such promises, representations and assurances.

98.     Miller relied upon Laidlaw's, Russo's and Cirella's promises, representations and assurances to his detriment as South Pacific Partners was never a viable investment or business opportunity.

99.     By virtue of Laidlaw's, Russo's and Cirella's willful, wanton, malicious and bad faith promises, representations and assurances to Miller, Miller is entitled to recover exemplary damages.

100.    As a direct, natural, proximate and foreseeable consequence of the foregoing, Miller has suffered damages for which he is entitled to recover, including, but not limited to, compensatory damages, consequential damages, exemplary damages, interest, costs and attorney fees.

WHEREFORE, Plaintiff, Miller, demands that judgment be entered against Defendants, Laidlaw, Russo and Cirella, as follows:

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

18

A.  A full and complete accounting as to each and every one of Miller's investments in the Companies, including, but not limited to, the recipients of each of Miller's investments, the commissions and other benefits received by each of the named Defendants to this count in connection with each of Miller's investments and all records pertaining to Miller's investments;

B.  Compensatory damages in an amount in excess of $75,000;

C.  Consequential damages in an amount in excess of $75,000;

D.  Exemplary damages in an amount in excess of $75,000;

E.  Interest, costs and attorney fees; and

F.  Such other and further relief as is warranted and appropriate.

## COUNT II
## NEGLIGENT MISREPRESENTATION
### (Miller v. Laidlaw, Russo and Cirella)

101.   Plaintiff, Miller, hereby incorporates by reference and realleges Paragraphs 1 through 100 of this Complaint as if fully restated herein.

102.   Laidlaw, Russo and Cirella expressly and impliedly undertook to exercise and owed a duty to Miller to exercise ordinary and reasonable care in providing financial advice to Miller and protecting the value of Miller's investments.

103.   Laidlaw, Russo and Cirella breached that duty by falsely promising, representing and assuring Miller that investing in South Pacific Partners was a great investment and business opportunity and failing to protect the value of Miller's investments in South Pacific Partners after Miller had invested in that company.

104.   Miller reasonably and justifiably relied upon Laidlaw, Russo and Cirella to exercise ordinary and reasonable care in providing financial advice to Miller and protecting the value of Miller's ensuing investments in South Pacific Partners as Miller's investment brokers.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

105.    Despite their duty of care owed to Miller, and despite Miller's reasonable and justifiable reliance, Laidlaw, Russo and Cirella failed and neglected to exercise reasonable care in advising Miller to invest in South Pacific Partners inasmuch as South Pacific Partners was never a viable investment or business opportunity.

106.    Miller relied upon Laidlaw's, Russo's and Cirella's promises, representations and assurances to his substantial detriment including, but not limited to, the complete and total loss of his investments in South Pacific Partners.

107.    By virtue of Laidlaw's, Russo's and Cirella's willful, wanton, malicious and bad faith conduct, Miller is entitled to recover exemplary damages.

108.    As a direct, natural, proximate and foreseeable consequence of the foregoing, Miller has suffered damages for which he is entitled to recover, including, but not limited to, compensatory damages, consequential damages, exemplary damages, interest, costs and attorney fees.

WHEREFORE, Plaintiff, Miller, demands that judgment be entered against Defendants, Laidlaw, Russo and Cirella, as follows:

A.    A full and complete accounting as to each and every one of Miller's investments in the Companies, including, but not limited to, the recipients of each of Miller's investments, the commissions and other benefits received by each of the named Defendants to this count in connection with each of Miller's investments and all records pertaining to Miller's investments;

B.    Compensatory damages in an amount in excess of $75,000;

C.    Consequential damages in an amount in excess of $75,000;

D.    Exemplary damages in an amount in excess of $75,000;

E.    Interest, costs and attorney fees; and

F.    Such other and further relief as is warranted and appropriate.

## COUNT III
## BREACH OF FIDUCIARY DUTY

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

**(Miller v. Laidlaw, Russo and Cirella)**

109.    Plaintiff, Miller, hereby incorporates by reference and realleges Paragraphs 1 through 108 of this Complaint as if fully restated herein.

110.    A fiduciary relationship has existed at all times relevant hereto between Miller, on the one hand, and Laidlaw, Russo and Cirella, on the other hand, by virtue of Laidlaw's, Russo's and Cirella's service as Miller's investment brokers.

111.    Notwithstanding their fiduciary duties owed to Miller, Laidlaw, Russo and Cirella falsely promised, represented and assured Miller that investing in South Pacific Partners was a great investment and business opportunity and then failed to protect the value of Miller's investments in South Pacific Partners.

112.    By virtue of the foregoing, Laidlaw, Russo and Cirella breached and violated their fiduciary duties owed to Miller.

113.    Laidlaw, Russo and Cirella acted intentionally, maliciously and in bad faith for the purpose of inducing Miller to makes substantial investments of $1.25 million in South Pacific Partners so that Laidlaw, Russo and Cirella could reap the benefits of Miller's substantial investments even though Miller never had any real prospect of receiving any return on his investments.

114.    By virtue of Laidlaw's, Russo's and Cirella's intentional, malicious and bad faith conduct in derogation of Miller's rights, Miller is entitled to recover exemplary damages.

115.    As a direct, natural, proximate and foreseeable consequence of the foregoing, Miller has suffered damages for which he is entitled to recover, including, but not limited to, compensatory damages, consequential damages, exemplary damages, interest, costs and attorney fees.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

WHEREFORE, Plaintiff, Miller, demands that judgment be entered against Defendants, Laidlaw, Russo and Cirella, as follows:

A.    A full and complete accounting as to each and every one of Miller's investments in the Companies, including, but not limited to, the recipients of each of Miller's investments, the commissions and other benefits received by each of the named Defendants to this count in connection with each of Miller's investments and all records pertaining to Miller's investments;

B.    Compensatory damages in an amount in excess of $75,000;

C.    Consequential damages in an amount in excess of $75,000;

D.    Exemplary damages in an amount in excess of $75,000;

E.    Interest, costs and attorney fees; and

F.    Such other and further relief as is warranted and appropriate.

**COUNT IV**
**UNJUST ENRICHMENT**
**(Miller v. Laidlaw, Russo and Cirella)**

116.    Plaintiff, Miller, hereby incorporates by reference and realleges Paragraphs 1 through 115 of this Complaint as if fully restated herein.

117.    Miller invested $1.25 million in South Pacific Partners through Laidlaw based upon Laidlaw's, Russo's and Cirella's false promises, representations and assurances that South Pacific Partners was a great investment and business opportunity.

118.    Laidlaw, Russo and Cirella were unjustly enriched by virtue of receiving the benefits of Miller's investments in South Pacific Partners even though they falsely promised, represented and assured Miller that investing in South Pacific Partners was a great investment and business opportunity and then failed to protect the value of Miller's investments in South Pacific Partners.

119.    Miller is entitled to recover the amount by which Laidlaw, Russo and Cirella have been unjustly enriched.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

120.    As a direct, natural, proximate and foreseeable consequence of the foregoing, Miller has suffered damages for which he is entitled to recover, including, but not limited to, compensatory damages, consequential damages, interest, costs and attorney fees.

WHEREFORE, Plaintiff, Miller, demands that judgment be entered against Defendants, Laidlaw, Russo and Cirella, as follows:

A.    A full and complete accounting as to each and every one of Miller's investments in the Companies, including, but not limited to, the recipients of each of Miller's investments, the commissions and other benefits received by each of the named Defendants to this count in connection with each of Miller's investments and all records pertaining to Miller's investments;

B.    Compensatory damages in an amount in excess of $75,000;

C.    Consequential damages in an amount in excess of $75,000;

D.    Interest, costs and attorney fees; and

E.    Such other and further relief as is warranted and appropriate.

## COUNT V
## ACCOUNTING
### (Miller v. Laidlaw, Russo and Cirella)

121.    Plaintiff, Miller, hereby incorporates by reference and realleges Paragraphs 1 through 120 of this Complaint as if fully restated herein.

122.    Laidlaw, Russo and Cirella falsely promised, represented and assured Miller that investing $1.25 million in South Pacific Partners was a great investment and business opportunity and then failed to protect the value of Miller's investments in South Pacific Partners, which investments have been completely and totally lost.

123.    Miller, by virtue of investing $1.25 million in South Pacific Partners through Laidlaw, is entitled to his lost investments and to review and inspect the books and records maintained by Laidlaw, Russo and Cirella regarding South Pacific Partners.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001
—
NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

124.    Despite repeated and due demand, Laidlaw, Russo and Cirella have failed to provide Miller with the books and records maintained by Laidlaw, Russo and Cirella regarding South Pacific Partners.

125.    Laidlaw's, Russo's and Cirella's failure to provide Miller with the books and records maintained by Laidlaw, Russo and Cirella regarding South Pacific Partners has prevented Miller from becoming aware of additional actionable claims he may have against interested parties, and Miller may not have an adequate remedy at law without the benefit of an accounting.

126.    Laidlaw's, Russo's and Cirella's books and records regarding South Pacific Partners should be fully produced to Miller in order to enable a full accounting to be conducted.

127.    By virtue of Laidlaw's, Russo's and Cirella's intentional, malicious and bad faith conduct in derogation of Miller's rights, Miller is entitled to recover exemplary damages.

128.    As a direct, natural, proximate and foreseeable consequence of the foregoing, Miller has suffered damages for which he is entitled to recover, including, but not limited to, compensatory damages, consequential damages, exemplary damages, interest, costs and attorney fees.

WHEREFORE, Plaintiff, Miller, demands that judgment be entered against Defendants, Laidlaw, Russo and Cirella, as follows:

A.    A full and complete accounting as to each and every one of Miller's investments in the Companies, including, but not limited to, the recipients of each of Miller's investments, the commissions and other benefits received by each of the named Defendants to this count in connection with each of Miller's investments and all records pertaining to Miller's investments;

B.    Compensatory damages in an amount in excess of $75,000;

C.    Consequential damages in an amount in excess of $75,000;

D.    Exemplary damages in an amount in excess of $75,000;

E.    Interest, costs and attorney fees; and

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001
___
NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

F.      Such other and further relief as is warranted and appropriate.

**COUNT VI**
**FRAUD AND MISREPRESENTATION**
**(Seyburn v. Laidlaw and Cirella)**

129.    Plaintiff, Seyburn, hereby incorporates by reference and realleges Paragraphs 1 through 128 of this Complaint as if fully restated herein.

130.    Laidlaw and Cirella promised, represented and assured Seyburn that South Pacific Partners, Anpath Group and Baxil were great investment and business opportunities.

131.    Laidlaw's and Cirella's promises, representations and assurances to Seyburn that South Pacific Partners, Anpath Group and Baxil were great investment and business opportunities were false and/or made in reckless disregard of the truth.

132.    Laidlaw and Cirella promised, represented and assured Seyburn that South Pacific Partners, Anpath Group and Baxil were great investment and business opportunities for the purpose of inducing Seyburn to invest in South Pacific Partners so that Laidlaw and Cirella could reap the benefits of Seyburn's investments in those companies while Seyburn has completely and totally lost his investments.

133.    Seyburn relied upon Laidlaw's and Cirella's promises, representations and assurances to Seyburn that South Pacific Partners, Anpath Group and Baxil were great investment and business opportunities and invested in South Pacific Partners based upon such promises, representations and assurances.

134.    Seyburn relied upon Laidlaw's and Cirella's promises, representations and assurances to his detriment as South Pacific Partners, Anpath Group and Baxil were great investment and business opportunities were never viable investment or business opportunities.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

135.    By virtue of Laidlaw's and Cirella's willful, wanton, malicious and bad faith promises, representations and assurances to Seyburn, Seyburn is entitled to recover exemplary damages.

136.    As a direct, natural, proximate and foreseeable consequence of the foregoing, Seyburn has suffered damages for which he is entitled to recover, including, but not limited to, compensatory damages, consequential damages, exemplary damages, interest, costs and attorney fees.

WHEREFORE, Plaintiff, Seyburn, demands that judgment be entered against Defendants, Laidlaw and Cirella, as follows:

A.    A full and complete accounting as to each and every one of Seyburn's investments in the Companies, including, but not limited to, the recipients of each of Seyburn's investments, the commissions and other benefits received by each of the named Defendants to this count in connection with each of Seyburn's investments and all records pertaining to Seyburn's investments;

B.    Compensatory damages in an amount in excess of $75,000;

C.    Consequential damages in an amount in excess of $75,000;

D.    Exemplary damages in an amount in excess of $75,000;

E.    Interest, costs and attorney fees; and

F.    Such other and further relief as is warranted and appropriate.

### COUNT VII
### NEGLIGENT MISREPRESENTATION
**(Seyburn v. Laidlaw and Cirella)**

137.    Plaintiff, Seyburn, hereby incorporates by reference and realleges Paragraphs 1 through 136 of this Complaint as if fully restated herein.

138.    Laidlaw and Cirella expressly and impliedly undertook to exercise and owed a duty to Seyburn to exercise ordinary and reasonable care in providing financial advice to Seyburn and protecting the value of Seyburn's investments.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ⁿᵈ STREET
10ᵗʰ FLOOR
NEW YORK, NY 10017
(212) 586-5905

139.    Laidlaw and Cirella breached that duty by falsely promising, representing and assuring Seyburn that South Pacific Partners, Anpath Group and Baxil were great investment and business opportunities and failing to protect the value of Seyburn's investments after Seyburn had invested in those companies.

140.    Seyburn reasonably and justifiably relied upon Laidlaw and Cirella to exercise ordinary and reasonable care in providing financial advice to Seyburn and protecting the value of Seyburn's ensuing investments as Seyburn's investment brokers.

141.    Despite their duty of care owed to Seyburn, and despite Seyburn's reasonable and justifiable reliance, Laidlaw and Cirella failed and neglected to exercise reasonable care in advising Seyburn to invest in South Pacific Partners, Anpath Group and Baxil inasmuch as those companies were never viable investments or business opportunities.

142.    Seyburn relied upon Laidlaw's and Cirella's promises, representations and assurances to his substantial detriment including, but not limited to, the complete and total loss of his investment in the South Pacific Partners.

143.    By virtue of Laidlaw's and Cirella's willful, wanton, malicious and bad faith conduct, Seyburn is entitled to recover exemplary damages.

144.    As a direct, natural, proximate and foreseeable consequence of the foregoing, Seyburn has suffered damages for which he is entitled to recover, including, but not limited to, compensatory damages, consequential damages, exemplary damages, interest, costs and attorney fees.

WHEREFORE, Plaintiff, Seyburn, demands that judgment be entered against Defendants, Laidlaw and Cirella, as follows:

A.    A full and complete accounting as to each and every one of Seyburn's investments in the Companies, including, but not limited to, the recipients of each of Seyburn's investments, the commissions and other benefits received by each of the named Defendants to this count in connection with each of Seyburn's investments and all records pertaining to Seyburn's investments;

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ⁿᵈ STREET
10ᵗʰ FLOOR
NEW YORK, NY 10017
(212) 586-5905

B.     Compensatory damages in an amount in excess of $75,000;

C.     Consequential damages in an amount in excess of $75,000;

D.     Exemplary damages in an amount in excess of $75,000;

E.     Interest, costs and attorney fees; and

F.     Such other and further relief as is warranted and appropriate.

### COUNT VIII
### BREACH OF FIDUCIARY DUTY
#### (Seyburn v. Laidlaw and Cirella)

145.   Plaintiff, Seyburn, hereby incorporates by reference and realleges Paragraphs 1 through 144 of this Complaint as if fully restated herein.

146.   A fiduciary relationship has existed at all times relevant hereto between Seyburn, on the one hand, and Laidlaw and Cirella, on the other hand, by virtue of Laidlaw's and Cirella's service as Seyburn's investment brokers.

147.   Notwithstanding their fiduciary duties owed to Seyburn, Laidlaw and Cirella falsely promised, represented and assured Seyburn that South Pacific Partners, Anpath Group and Baxil were great investment and business opportunities and then failed to protect the value of Seyburn's investments in those companies.

148.   By virtue of the foregoing, Laidlaw and Cirella breached and violated their fiduciary duties owed to Seyburn.

149.   Laidlaw and Cirella acted intentionally, maliciously and in bad faith for the purpose of inducing Seyburn to make a substantial investments of $350,000 in South Pacific Partners, Anpath Group and Baxil so that Laidlaw and Cirella could reap the benefits of Seyburn's substantial investments even though Seyburn never had any real prospect of receiving any return on his investments.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

28

150.     By virtue of Laidlaw's and Cirella's intentional, malicious and bad faith conduct in derogation of Seyburn's rights, Seyburn is entitled to recover exemplary damages.

151.     As a direct, natural, proximate and foreseeable consequence of the foregoing, Seyburn has suffered damages for which he is entitled to recover, including, but not limited to, compensatory damages, consequential damages, exemplary damages, interest, costs and attorney fees.

WHEREFORE, Plaintiff, Seyburn, demands that judgment be entered against Defendants, Laidlaw and Cirella, as follows:

A.     A full and complete accounting as to each and every one of Seyburn's investments in the Companies, including, but not limited to, the recipients of each of Seyburn's investments, the commissions and other benefits received by each of the named Defendants to this count in connection with each of Seyburn's investments and all records pertaining to Seyburn's investments;

B.     Compensatory damages in an amount in excess of $75,000;

C.     Consequential damages in an amount in excess of $75,000;

D.     Exemplary damages in an amount in excess of $75,000;

E.     Interest, costs and attorney fees; and

F.     Such other and further relief as is warranted and appropriate.

**COUNT IX**
**UNJUST ENRICHMENT**
**(Seyburn v. Laidlaw and Cirella)**

152.     Plaintiff, Seyburn, hereby incorporates by reference and realleges Paragraphs 1 through 151 of this Complaint as if fully restated herein.

153.     Seyburn invested $350,000 through Laidlaw based upon Laidlaw's and Cirella's false promises, representations and assurances that South Pacific Partners, Anpath Group and Baxil were great investment and business opportunities.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW
——
MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE  200
BIRMINGHAM, MI  48009
(248) 864-4000
FAX (248) 864-4001
——
NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY  10017
(212) 586-5905

154.    Laidlaw and Cirella were unjustly enriched by virtue of receiving the benefits of Seyburn's investments in South Pacific Partners, Anpath Group and Baxil even though they falsely promised, represented and assured Seyburn that South Pacific Partners, Anpath Group and Baxil were great investment and business opportunities and then failed to protect the value of Seyburn's investments in those companies.

155.    Seyburn is entitled to recover the amount by which Laidlaw and Cirella have been unjustly enriched.

156.    As a direct, natural, proximate and foreseeable consequence of the foregoing, Seyburn has suffered damages for which he is entitled to recover, including, but not limited to, compensatory damages, consequential damages, interest, costs and attorney fees.

WHEREFORE, Plaintiff, Seyburn, demands that judgment be entered against Defendants, Laidlaw and Cirella, as follows:

A.    A full and complete accounting as to each and every one of Seyburn's investments in the Companies, including, but not limited to, the recipients of each of Seyburn's investments, the commissions and other benefits received by each of the named Defendants to this count in connection with each of Seyburn's investments and all records pertaining to Seyburn's investments;

B.    Compensatory damages in an amount in excess of $75,000;

C.    Consequential damages in an amount in excess of $75,000;

D.    Interest, costs and attorney fees; and

E.    Such other and further relief as is warranted and appropriate.

## COUNT X
## ACCOUNTING
### (Seyburn v. Laidlaw and Cirella)

157.    Plaintiff, Seyburn, hereby incorporates by reference and realleges Paragraphs 1 through 156 of this Complaint as if fully restated herein.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ⁿᵈ STREET
10ᵗʰ FLOOR
NEW YORK, NY 10017
(212) 586-5905

158.    Laidlaw and Cirella falsely promised, represented and assured Seyburn that South Pacific Partners, Anpath Group and Baxil were great investment and business opportunities and then failed to protect the value of Seyburn's investments in those companies, which investments have been completely and totally lost.

159.    Seyburn, by virtue of his investment of $350,000 in South Pacific Partners, Anpath Group and Baxil through Laidlaw is entitled to his lost investments and to review and inspect the books and records maintained by Laidlaw and Cirella regarding those companies.

160.    Laidlaw and Cirella have failed to provide Seyburn with the books and records maintained by Laidlaw and Cirella regarding South Pacific Partners, Anpath Group and Baxil.

161.    Laidlaw's and Cirella's failure to provide Seyburn with the books and records maintained by Laidlaw and Cirella regarding South Pacific Partners, Anpath Group and Baxil has prevented Seyburn from becoming aware of additional actionable claims he may have against interested parties, and Seyburn may not have an adequate remedy at law without the benefit of an accounting.

162.    Laidlaw's and Cirella's books and records regarding South Pacific Partners, Anpath Group and Baxil should be fully produced to Seyburn in order to enable a full accounting to be conducted.

163.    By virtue of Laidlaw's and Cirella's intentional, malicious and bad faith conduct in derogation of Seyburn's rights, Seyburn is entitled to recover exemplary damages.

164.    As a direct, natural, proximate and foreseeable consequence of the foregoing, Seyburn has suffered damages for which he is entitled to recover, including, but not limited to, compensatory damages, consequential damages, exemplary damages, interest, costs and attorney fees.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW
_____

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE  200
BIRMINGHAM, MI  48009
(248) 864-4000
FAX (248) 864-4001
_____

NEW YORK OFFICE
110 E. 42nd STREET
10th FLOOR
NEW YORK, NY  10017
(212) 586-5905

WHEREFORE, Plaintiff, Seyburn, demands that judgment be entered against Defendants, Laidlaw and Cirella, as follows:

A.   A full and complete accounting as to each and every one of Seyburn's investments in the Companies, including, but not limited to, the recipients of each of Seyburn's investments, the commissions and other benefits received by each of the named Defendants to this count in connection with each of Seyburn's investments and all records pertaining to Seyburn's investments;

B.   Compensatory damages in an amount in excess of $75,000;

C.   Consequential damages in an amount in excess of $75,000;

D.   Exemplary damages in an amount in excess of $75,000;

E.   Interest, costs and attorney fees; and

F.   Such other and further relief as is warranted and appropriate.

## COUNT XI
## FRAUD AND MISREPRESENTATION
### (Wirth v. Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella)

165.   Plaintiff, Wirth, hereby incorporates by reference and realleges Paragraphs 1 through 164 of this Complaint as if fully restated herein.

166.   Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella promised, represented and assured Wirth that South Pacific Partners, Baxil, Patron, Spireline, Wherify, Alfacell Corp., Anpath Group and Fomax (collectively, the "Companies") were great investments and business opportunities.

167.   Laidlaw's, Regan's, Fowler's, Gianntonio's, Russo's and Cirella's promises, representations and assurances to Wirth that the Companies were great investments and business opportunities were false and/or made in reckless disregard of the truth.

168.   Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella promised, represented and assured Wirth that the Companies were great investments and business opportunities for the purpose

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

of inducing Wirth to invest in the Companies so that Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella could reap the benefits of Wirth's investments in the Companies while Wirth lost virtually all of his investments in the Companies.

169.    Wirth relied upon Laidlaw's, Regan's, Fowler's, Gianntonio's, Russo's and Cirella's promises, representations and assurances to Wirth that the Companies were great investments and business opportunities and invested in the Companies based upon such promises, representations and assurances.

170.    Wirth relied upon Laidlaw's, Regan's, Fowler's, Gianntonio's, Russo's and Cirella's promises, representations and assurances to his detriment as the Companies were never viable investments or business opportunities.

171.    By virtue of Laidlaw's, Regan's, Fowler's, Gianntonio's, Russo's and Cirella's willful, wanton, malicious and bad faith promises, representations and assurances to Wirth, Wirth is entitled to recover exemplary damages.

172.    As a direct, natural, proximate and foreseeable consequence of the foregoing, Wirth has suffered damages for which he is entitled to recover, including, but not limited to, compensatory damages, consequential damages, exemplary damages, interest, costs and attorney fees.

WHEREFORE, Plaintiff, Wirth, demands that judgment be entered against Defendants, Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella, as follows:

A.    A full and complete accounting as to each and every one of Wirth's investments in the Companies, including, but not limited to, the recipients of each of Wirth's investments, the commissions and other benefits received by each of the named Defendants to this count in connection with each of Wirth's investments and all records pertaining to Wirth's investments;

B.    Compensatory damages in an amount in excess of $75,000;

C.    Consequential damages in an amount in excess of $75,000;

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ⁿᵈ STREET
10ᵀᴴ FLOOR
NEW YORK, NY 10017
(212) 586-5905

D.     Exemplary damages in an amount in excess of $75,000;

E.     Interest, costs and attorney fees; and

F.     Such other and further relief as is warranted and appropriate.

### COUNT XII
### NEGLIGENT MISREPRESENTATION
**(Wirth v. Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella)**

173.    Plaintiff, Wirth, hereby incorporates by reference and realleges Paragraphs 1 through 172 of this Complaint as if fully restated herein.

174.    Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella expressly and impliedly undertook to exercise and owed a duty to Wirth to exercise ordinary and reasonable care in providing financial advice to Wirth and protecting the value of Wirth's investments.

175.    Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella breached that duty by falsely promising, representing and assuring Wirth that investing in the Companies was a great business opportunity and failing to protect the value of Wirth's investments after Wirth had invested in the Companies.

176.    Wirth reasonably and justifiably relied upon Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella to exercise ordinary and reasonable care in providing financial advice to Wirth and protecting the value of Wirth's ensuing investments as Wirth's investment brokers.

177.    Despite their duty of care owed to Wirth, and despite Wirth's reasonable and justifiable reliance, Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella failed and neglected to exercise reasonable care in advising Wirth to invest in the Companies inasmuch as the Companies were never viable business opportunities.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

34

178.    Wirth relied upon Laidlaw's, Regan's, Fowler's, Gianntonio's, Russo's and Cirella's promises, representations and assurances to his substantial detriment including, but not limited to, the loss of the virtually all of his investments in the Companies.

179.    By virtue of Laidlaw's, Regan's, Fowler's, Gianntonio's, Russo's and Cirella's willful, wanton, malicious and bad faith conduct, Wirth is entitled to recover exemplary damages.

180.    As a direct, natural, proximate and foreseeable consequence of the foregoing, Wirth has suffered damages for which he is entitled to recover, including, but not limited to, compensatory damages, consequential damages, exemplary damages, interest, costs and attorney fees.

WHEREFORE, Plaintiff, Wirth, demands that judgment be entered against Defendants, Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella, as follows:

A.     A full and complete accounting as to each and every one of Wirth's investments in the Companies, including, but not limited to, the recipients of each of Wirth's investments, the commissions and other benefits received by each of the named Defendants to this count in connection with each of Wirth's investments and all records pertaining to Wirth's investments;

B.     Compensatory damages in an amount in excess of $75,000;

C.     Consequential damages in an amount in excess of $75,000;

D.     Exemplary damages in an amount in excess of $75,000;

E.     Interest, costs and attorney fees; and

F.     Such other and further relief as is warranted and appropriate.

## COUNT XIII
## BREACH OF FIDUCIARY DUTY
### (Wirth v. Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella)

181.    Plaintiff, Wirth, hereby incorporates by reference and realleges Paragraphs 1 through 180 of this Complaint as if fully restated herein.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

182.     A fiduciary relationship has existed at all times relevant hereto between Wirth, on the one hand, and Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella, on the other hand, by virtue of Laidlaw's, Regan's, Fowler's, Gianntonio's, Russo's and Cirella's service as Wirth's investment brokers.

183.     Notwithstanding their fiduciary duties owed to Wirth, Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella falsely promised, represented and assured Wirth that investing in the Companies was a great business opportunity and then failed to protect the value of Wirth's investments in the Companies.

184.     By virtue of the foregoing, Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella breached and violated their fiduciary duties owed to Wirth.

185.     Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella acted intentionally, maliciously and in bad faith for the purpose of inducing Wirth to makes substantial investments in excess of $4.1 million in the Companies so that Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella could reap the benefits of Wirth's substantial investments even though Wirth never had any real prospect of receiving any return on his investments.

186.     By virtue of Laidlaw's, Regan's, Fowler's, Gianntonio's, Russo's and Cirella's intentional, malicious and bad faith conduct in derogation of Wirth's rights, Wirth is entitled to recover exemplary damages.

187.     As a direct, natural, proximate and foreseeable consequence of the foregoing, Wirth has suffered damages for which he is entitled to recover, including, but not limited to, compensatory damages, consequential damages, exemplary damages, interest, costs and attorney fees.

WHEREFORE, Plaintiff, Wirth, demands that judgment be entered against Defendants, Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella, as follows:

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ⁿᵈ STREET
10ᵀᴴ FLOOR
NEW YORK, NY 10017
(212) 586-5905

A.      A full and complete accounting as to each and every one of Wirth's investments in the Companies, including, but not limited to, the recipients of each of Wirth's investments, the commissions and other benefits received by each of the named Defendants to this count in connection with each of Wirth's investments and all records pertaining to Wirth's investments;

B.      Compensatory damages in an amount in excess of $75,000;

C.      Consequential damages in an amount in excess of $75,000;

D.      Exemplary damages in an amount in excess of $75,000;

E.      Interest, costs and attorney fees; and

F.      Such other and further relief as is warranted and appropriate.

## COUNT XIV
## UNJUST ENRICHMENT
### (Wirth v. Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella)

188.    Plaintiff, Wirth, hereby incorporates by reference and realleges Paragraphs 1 through 187 of this Complaint as if fully restated herein.

189.    Wirth invested more than $4.1 million through Laidlaw based upon Laidlaw's, Regan's, Fowler's, Gianntonio's, Russo's and Cirella's false promises, representations and assurances that investing in the Companies was a great business opportunity.

190.    Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella were unjustly enriched by virtue of receiving the benefits of Wirth's investments in the Companies even though they falsely promised, represented and assured Wirth that investing in the Companies was a great business opportunity and then failed to protect the value of Wirth's investments in the Companies.

191.    Wirth is entitled to recover the amount by which Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella have been unjustly enriched.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE  200
BIRMINGHAM, MI  48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY  10017
(212) 586-5905

192.     As a direct, natural, proximate and foreseeable consequence of the foregoing, Wirth has suffered damages for which he is entitled to recover, including, but not limited to, compensatory damages, consequential damages,interest, costs and attorney fees.

WHEREFORE, Plaintiff, Wirth, demands that judgment be entered against Defendants, Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella, as follows:

A.     A full and complete accounting as to each and every one of Wirth's investments in the Companies, including, but not limited to, the recipients of each of Wirth's investments, the commissions and other benefits received by each of the named Defendants to this count in connection with each of Wirth's investments and all records pertaining to Wirth's investments;

B.     Compensatory damages in an amount in excess of $75,000;

C.     Consequential damages in an amount in excess of $75,000;

D.     Interest, costs and attorney fees; and

E.     Such other and further relief as is warranted and appropriate.

## COUNT XV
## ACCOUNTING
### (Wirth v. Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella)

193.     Plaintiff, Wirth, hereby incorporates by reference and realleges Paragraphs 1 through 192 of this Complaint as if fully restated herein.

194.     Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella falsely promised, represented and assured Wirth that investing more than $4.1 million in the Companies was a great business opportunity and then failed to protect the value of Wirth's investments in the Companies, which investments have virtually all been lost.

195.     Wirth, by virtue of his investments of more than $4.1 million in the Companies through Laidlaw is entitled to his lost investments and to review and inspect the books and records maintained by Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella regarding the Companies.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

196.     Despite repeated and due demand, Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella have failed to provide Wirth with the books and records maintained by Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella regarding the Companies.

197.     Laidlaw's, Regan's, Fowler's, Gianntonio's, Russo's and Cirella's failure to provide Wirth with the books and records maintained by Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella regarding the Companies has prevented Wirth from becoming aware of additional actionable claims he may have against interested parties, and Wirth may not have an adequate remedy at law without the benefit of an accounting.

198.     Laidlaw's, Regan's, Fowler's, Gianntonio's, Russo's and Cirella's books and records regarding the Companies should be fully produced to Wirth in order to enable a full accounting to be conducted.

199.     By virtue of Laidlaw's, Regan's, Fowler's, Gianntonio's, Russo's and Cirella's intentional, malicious and bad faith conduct in derogation of Wirth's rights, Wirth is entitled to recover exemplary damages.

200.     As a direct, natural, proximate and foreseeable consequence of the foregoing, Wirth has suffered damages for which he is entitled to recover, including, but not limited to, compensatory damages, consequential damages, exemplary damages, interest, costs and attorney fees.

WHEREFORE, Plaintiff, Wirth, demands that judgment be entered against Defendants, Laidlaw, Regan, Fowler, Gianntonio, Russo and Cirella, as follows:

A.     A full and complete accounting as to each and every one of Wirth's investments in the Companies, including, but not limited to, the recipients of each of Wirth's investments, the commissions and other benefits received by each of the named Defendants to this count in connection with each of Wirth's investments and all records pertaining to Wirth's investments;

B.     Compensatory damages in an amount in excess of $75,000;

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

C.      Consequential damages in an amount in excess of $75,000;

D.      Exemplary damages in an amount in excess of $75,000;

E.      Interest, costs and attorney fees; and

F.      Such other and further relief as is warranted and appropriate.

### COUNT XVI
### FRAUD AND MISREPRESENTATION
### (Randolph v. Laidlaw and Silverman)

201.    Plaintiff, Randolph, hereby incorporates by reference and realleges Paragraphs 1 through 200 of this Complaint as if fully restated herein.

202.    Laidlaw and Silverman promised, represented and assured Randolph that South Pacific Partners, Palisades, Home Director, THC-Trek, Zestra and Anpath Group were great investments and business opportunities.

203.    Laidlaw's and Silverman's promises, representations and assurances to Randolph that South Pacific Partners, Palisades, Home Director, THC-Trek, Zestra and Anpath Group were great investments and business opportunities were false and/or made in reckless disregard of the truth.

204.    Laidlaw and Silverman promised, represented and assured Randolph that South Pacific Partners, Palisades, Home Director, THC-Trek, Zestra and Anpath Group were great investments and business opportunities for the purpose of inducing Randolph to invest in South Pacific Partners, Palisades, Home Director, THC-Trek, Zestra and Anpath Group so that Laidlaw and Silverman could reap the benefits of Randolph's investment in those companies while Randolph has completely and totally lost his investments.

205.    Randolph relied upon Laidlaw's and Silverman's promises, representations and assurances to Randolph that South Pacific Partners, Palisades, Home Director, THC-Trek, Zestra and

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

Anpath Group were great investments and business opportunities and invested in those companies based upon such promises, representations and assurances.

206.    Randolph relied upon Laidlaw's and Silverman's promises, representations and assurances to his detriment as South Pacific Partners, Palisades, Home Director, THC-Trek, Zestra and Anpath Group were never viable investments or business opportunities.

207.    By virtue of Laidlaw's and Silverman's willful, wanton, malicious and bad faith promises, representations and assurances to Randolph, Randolph is entitled to recover exemplary damages.

208.    As a direct, natural, proximate and foreseeable consequence of the foregoing, Randolph has suffered damages for which he is entitled to recover, including, but not limited to, compensatory damages, consequential damages, exemplary damages, interest, costs and attorney fees.

WHEREFORE, Plaintiff, Randolph, demands that judgment be entered against Defendants, Laidlaw and Silverman, as follows:

A.    A full and complete accounting as to each and every one of Randolph's investments in the Companies, including, but not limited to, the recipients of each of Randolph's investments, the commissions and other benefits received by each of the named Defendants to this count in connection with each of Randolph's investments and all records pertaining to Randolph's investments;

B.    Compensatory damages in an amount in excess of $75,000;

C.    Consequential damages in an amount in excess of $75,000;

D.    Exemplary damages in an amount in excess of $75,000;

E.    Interest, costs and attorney fees; and

F.    Such other and further relief as is warranted and appropriate.

**COUNT XVII**

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE  200
BIRMINGHAM, MI  48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ⁿᵈ STREET
10ᵗʰ FLOOR
NEW YORK, NY  10017
(212) 586-5905

## NEGLIGENT MISREPRESENTATION
### (Randolph v. Laidlaw and Silverman)

209.   Plaintiff, Randolph, hereby incorporates by reference and realleges Paragraphs 1 through 208 of this Complaint as if fully restated herein.

210.   Laidlaw and Silverman expressly and impliedly undertook to exercise and owed a duty to Randolph to exercise ordinary and reasonable care in providing financial advice to Randolph and protecting the value of Randolph's investments.

211.   Laidlaw and Silverman breached that duty by falsely promising, representing and assuring Randolph that South Pacific Partners, Palisades, Home Director, THC-Trek, Zestra and Anpath Group were great investments and business opportunities and failing to protect the value of Randolph's investments after Randolph had invested in those companies.

212.   Randolph reasonably and justifiably relied upon Laidlaw and Silverman to exercise ordinary and reasonable care in providing financial advice to Randolph and protecting the value of Randolph's ensuing investments as Randolph's investment brokers.

213.   Despite their duty of care owed to Randolph, and despite Randolph's reasonable and justifiable reliance, Laidlaw and Silverman failed and neglected to exercise reasonable care in advising Randolph to invest in South Pacific Partners, Palisades, Home Director, THC-Trek, Zestra and Anpath Group inasmuch as those companies were never viable investments or business opportunities.

214.   Randolph relied upon Laidlaw's and Silverman's promises, representations and assurances to his substantial detriment including, but not limited to, the complete and total loss of his investments in South Pacific Partners, Palisades, Home Director, THC-Trek, Zestra and Anpath Group.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE  200
BIRMINGHAM, MI  48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ⁿᵈ STREET
10ᵀᴴ FLOOR
NEW YORK, NY  10017
(212) 586-5905

215.    By virtue of Laidlaw's and Silverman's willful, wanton, malicious and bad faith conduct, Randolph is entitled to recover exemplary damages.

216.    As a direct, natural, proximate and foreseeable consequence of the foregoing, Randolph has suffered damages for which he is entitled to recover, including, but not limited to, compensatory damages, consequential damages, exemplary damages, interest, costs and attorney fees.

WHEREFORE, Plaintiff, Randolph, demands that judgment be entered against Defendants, Laidlaw and Silverman, as follows:

A.    A full and complete accounting as to each and every one of Randolph's investments in the Companies, including, but not limited to, the recipients of each of Randolph's investments, the commissions and other benefits received by each of the named Defendants to this count in connection with each of Randolph's investments and all records pertaining to Randolph's investments;

B.    Compensatory damages in an amount in excess of $75,000;

C.    Consequential damages in an amount in excess of $75,000;

D.    Exemplary damages in an amount in excess of $75,000;

E.    Interest, costs and attorney fees; and

F.    Such other and further relief as is warranted and appropriate.

**COUNT XVIII**
**BREACH OF FIDUCIARY DUTY**
**(Randolph v. Laidlaw and Silverman)**

217.    Plaintiff, Randolph, hereby incorporates by reference and realleges Paragraphs 1 through 216 of this Complaint as if fully restated herein.

218.    A fiduciary relationship has existed at all times relevant hereto between Randolph, on the one hand, and Laidlaw and Silverman, on the other hand, by virtue of Laidlaw's and Silverman's service as Randolph's investment brokers.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

219.   Notwithstanding their fiduciary duties owed to Randolph, Laidlaw and Silverman falsely promised, represented and assured Randolph that South Pacific Partners, Palisades, Home Director, THC-Trek, Zestra and Anpath Group were great investments and business opportunities and then failed to protect the value of Randolph's investments in those companies.

220.   By virtue of the foregoing, Laidlaw and Silverman breached and violated their fiduciary duties owed to Randolph.

221.   Laidlaw and Silverman acted intentionally, maliciously and in bad faith for the purpose of inducing Randolph to make a substantial investments of more than $1.2 million in South Pacific Partners, Palisades, Home Director, THC-Trek, Zestra and Anpath Group so that Laidlaw and Silverman could reap the benefits of Randolph's substantial investments even though Randolph never had any real prospect of receiving any return on his investments.

222.   By virtue of Laidlaw's and Silverman's intentional, malicious and bad faith conduct in derogation of Randolph's rights, Randolph is entitled to recover exemplary damages.

223.   As a direct, natural, proximate and foreseeable consequence of the foregoing, Randolph has suffered damages for which he is entitled to recover, including, but not limited to, compensatory damages, consequential damages, exemplary damages, interest, costs and attorney fees.

WHEREFORE, Plaintiff, Randolph, demands that judgment be entered against Defendants, Laidlaw and Silverman, as follows:

A.   A full and complete accounting as to each and every one of Randolph's investments in the Companies, including, but not limited to, the recipients of each of Randolph's investments, the commissions and other benefits received by each of the named Defendants to this count in connection with each of Randolph's investments and all records pertaining to Randolph's investments;

B.   Compensatory damages in an amount in excess of $75,000;

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

44

C.      Consequential damages in an amount in excess of $75,000;

D.      Exemplary damages in an amount in excess of $75,000;

E.      Interest, costs and attorney fees; and

F.      Such other and further relief as is warranted and appropriate.

**COUNT XIX**
**UNJUST ENRICHMENT**
**(Randolph v. Laidlaw and Silverman)**

224.    Plaintiff, Randolph, hereby incorporates by reference and realleges Paragraphs 1 through 223 of this Complaint as if fully restated herein.

225.    Randolph invested more than $1.2 million through Laidlaw based upon Laidlaw's and Silverman's false promises, representations and assurances that South Pacific Partners, Palisades, Home Director, THC-Trek, Zestra and Anpath Group were great investments and business opportunities.

226.    Laidlaw and Silverman were unjustly enriched by virtue of receiving the benefits of Randolph's investments in South Pacific Partners, Palisades, Home Director, THC-Trek, Zestra and Anpath Group even though they falsely promised, represented and assured Randolph that those companies were great investments and business opportunities and then failed to protect the value of Randolph's investments in those company.

227.    Randolph is entitled to recover the amount by which Laidlaw and Silverman have been unjustly enriched.

228.    As a direct, natural, proximate and foreseeable consequence of the foregoing, Randolph has suffered damages for which he is entitled to recover, including, but not limited to, compensatory damages, consequential damages, interest, costs and attorney fees.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

WHEREFORE, Plaintiff, Randolph, demands that judgment be entered against Defendants, Laidlaw and Silverman, as follows:

A.   A full and complete accounting as to each and every one of Randolph's investments in the Companies, including, but not limited to, the recipients of each of Randolph's investments, the commissions and other benefits received by each of the named Defendants to this count in connection with each of Randolph's investments and all records pertaining to Randolph's investments;

B.   Compensatory damages in an amount in excess of $75,000;

C.   Consequential damages in an amount in excess of $75,000;

D.   Interest, costs and attorney fees; and

E.   Such other and further relief as is warranted and appropriate.

## COUNT XX
## ACCOUNTING
### (Randolph v. Laidlaw and Silverman)

229.   Plaintiff, Randolph, hereby incorporates by reference and realleges Paragraphs 1 through 228 of this Complaint as if fully restated herein.

230.   Laidlaw and Silverman falsely promised, represented and assured Randolph that South Pacific Partners, Palisades, Home Director, THC-Trek, Zestra and Anpath Group were great investments and business opportunities and then failed to protect the value of Randolph's investments in those companies, which investments have been completely and totally lost.

231.   Randolph, by virtue of his investments of more than $1.2 million in South Pacific Partners, Palisades, Home Director, THC-Trek, Zestra and Anpath Group through Laidlaw, is entitled to his lost investments and to review and inspect the books and records maintained by Laidlaw and Silverman regarding South Pacific Partners.

232.   Laidlaw and Silverman have failed to provide Randolph with the books and records maintained by Laidlaw and Silverman regarding South Pacific Partners.

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

233.    Laidlaw's and Silverman's failure to provide Randolph with the books and records maintained by Laidlaw and Silverman regarding South Pacific Partners, Palisades, Home Director, THC-Trek, Zestra and Anpath Group has prevented Randolph from becoming aware of additional actionable claims he may have against interested parties, and Randolph may not have an adequate remedy at law without the benefit of an accounting.

234.    Laidlaw's and Silverman's books and records regarding South Pacific Partners, Palisades, Home Director, THC-Trek, Zestra and Anpath Group should be fully produced to Randolph in order to enable a full accounting to be conducted.

235.    By virtue of Laidlaw's and Silverman's intentional, malicious and bad faith conduct in derogation of Randolph's rights, Randolph is entitled to recover exemplary damages.

236.    As a direct, natural, proximate and foreseeable consequence of the foregoing, Randolph has suffered damages for which he is entitled to recover, including, but not limited to, compensatory damages, consequential damages, exemplary damages, interest, costs and attorney fees.

WHEREFORE, Plaintiff, Randolph, demands that judgment be entered against Defendants, Laidlaw and Silverman, as follows:

A.    A full and complete accounting as to each and every one of Randolph's investments in the Companies, including, but not limited to, the recipients of each of Randolph's investments, the commissions and other benefits received by each of the named Defendants to this count in connection with each of Randolph's investments and all records pertaining to Randolph's investments;

B.    Compensatory damages in an amount in excess of $75,000;

C.    Consequential damages in an amount in excess of $75,000;

D.    Exemplary damages in an amount in excess of $75,000;

E.    Interest, costs and attorney fees; and

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ⁿᵈ STREET
10ᵀᴴ FLOOR
NEW YORK, NY 10017
(212) 586-5905

F.      Such other and further relief as is warranted and appropriate.

Respectfully submitted,

MORGANROTH & MORGANROTH, PLLC

By: /s/ Mayer Morganroth
MAYER MORGANROTH (P17966)
JEFFREY B. MORGANROTH (P41670)
DANIEL E. HAROLD (P61841)
Attorneys for Plaintiffs
344 North Old Woodward Ave., Suite 200
Birmingham, Michigan 48009
Dated: May 11, 2011          (248) 864-4000

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE 200
BIRMINGHAM, MI 48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10TH FLOOR
NEW YORK, NY 10017
(212) 586-5905

## JURY DEMAND

NOW COME Plaintiffs, Sheldon Miller, Bruce Seyburn, Arthur Wirth and James Randolph, by and through their attorneys, Morganroth & Morganroth, PLLC, and hereby demand a trial by jury in the above referenced matter.

Respectfully submitted,

MORGANROTH & MORGANROTH, PLLC

By:/s/ Mayer Morganroth
MAYER MORGANROTH (P17966)
JEFFREY B. MORGANROTH (P41670)
DANIEL E. HAROLD (P61841)
Attorneys for Plaintiffs
344 North Old Woodward Ave., Suite 200
Birmingham, Michigan 48009
Dated: May 11, 2011          (248) 864-4000

MORGANROTH
&
MORGANROTH,
PLLC
ATTORNEYS AT LAW

MICHIGAN OFFICE
344 N. OLD WOODWARD AVE.
SUITE  200
BIRMINGHAM, MI  48009
(248) 864-4000
FAX (248) 864-4001

NEW YORK OFFICE
110 E. 42ND STREET
10th FLOOR
NEW YORK, NY  10017
(212) 586-5905

49