**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SHELDON MILLER, BRUCE SEYBURN,
ARTHUR WIRTH and JAMES RANDOLPH,

               Plaintiffs,

v.

                                            Case No. 11-12086
                                            Honorable Denise Page Hood

LAIDLAW & COMPANY (UK) LTD., an
English corporation, HUGH REGAN, TED
FOWLER, JASON RUSSO, TODD CIRELLA,
STEPHEN GIANNANTONIO, and PETER
SILVERMAN,

               Defendants.

_____/

## ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(B)(2) AND DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 8, 9, AND 12(B)(6)

**I.**     **INTRODUCTION**

    This matter is before the Court on Defendants' Motion to Dismiss Pursuant to Rule

12(b)(2) **[Docket No. 15, filed August 15, 2011]** and Defendants' Motion to Dismiss Pursuant to

Rules 8, 9, and 12(b)(6) **[Docket No. 16, filed August 16, 2011]**. The Court heard oral

arguments on November 9, 2011. The matter is now fully briefed and appropriate for

determination. For the reasoned stated below, the Defendants' Motion to Dismiss Pursuant to

Rule 12(b)(2) is GRANTED IN PART and Motion to Dismiss Pursuant to Rules 8, 9, and

12(b)(6) is GRANTED IN PART.

**II.**     **BACKGROUND**

    Sheldon Miller, Bruce Seyburn, Arthur Wirth, and James Randolph (collectively the

"Plaintiffs") filed this present action on May 11, 2011 seeking relief under theories of fraud and misrepresentation (Counts I, VI, XI, XVI), negligent misrepresentation (Counts II, VII, XII, XVII), breach of fiduciary duty (Counts III, VIII, XIII, XVIII), unjust enrichment (Counts IV, IX, XIV, XIX), and accounting (Counts V, X, XV, XX).

Defendant, Laidlaw & Company, Ltd. is an English investment banking and brokerage firm (Compl. ¶¶ 5, 15). Plaintiffs are Laidlaw clients who invested millions of dollars in various investment ventures (Compl. ¶ 17). Plaintiffs invested in a business venture by South Pacific Partners, which was opening up at least 30 Hooters restaurants in Australia and New Zealand over the span of five years (Compl. ¶¶ 19-23). South Pacific issued a private offering on May 15, 2006 for 25 percent of its partnership in order to raise $7 million to open the restaurants (Compl. ¶ 23).

### A. Plaintiff Miller

Plaintiff Miller alleges that he invested $250,000 in South Pacific in 2006 based on the private offering and Defendant Jason Russo's, Laidlaw's Senior Managing Member and Co-Head of Product Sales, representations (Compl. ¶¶ 23, 29, 31). Defendant Russo stated that South Pacific was a great investment that would grow by 3.7 percent (Compl. ¶ 30). In October 2007 and February 2008, Miller was contacted by Laidlaw to provide short-term bridge loans (Compl. ¶¶ 37, 44, 50). In a February 2008 email, Russo stated that, in exchange for additional loans, South Pacific would increase the interest rates on the promissory note and provide one unit of South Pacific Partnership (Compl. ¶ 52). Russo indicated that the principal bridge loan would be repaid by April 15, 2008 (Compl. ¶ 53). In October 2007 and February 2008, Miller made two $500,000 bridge loans to South Pacific based on representations made by Defendants Russo and Cirella (Compl. ¶¶ 23-36, 44-45, 50-54). When the principal loan was not repaid, Miller

contacted Russo and/or Cirella in April 2008 and was told that the loan would be repaid on June 1, 2008 (Compl. ¶ 59). Miller and Russo and/or Cirella engaged in subsequent conversations and the date of payment was moved back several times (Compl. ¶¶ 59-62). In January 2009, Miller requested information on the investments from Laidlaw but was refused (Compl. ¶ 66).

### B.  Plaintiff Wirth

In October 2008, Giannantonio, Russo, Fowler and Regan contacted Wirth about providing a short-term bridge loan to South Pacific (Compl. ¶¶ 37-38). The loan would mature in April 2008 with an interest rate of nine percent and a warrant to purchase a partnership in South Pacific (Compl. ¶ 38). Wirth made a $500,000 bridge loan to South Pacific in October 2007 based on Defendants Giannantonio's representations (Compl. ¶ 40). In February 2008, a South Pacific investment broker named Robert Hersch asked for an additional bridge loan, which Wirth provided based on representations made by Fowler, Giannantonio, Russo, and Regan (Compl. ¶¶ 47-48). Fowler, Giannantonio, Russo, and Regan represented that it was a good investment and would be repaid by April 2008 (Compl. ¶ 48). Wirth also made investments in various other companies (Compl. ¶¶ 72-81, 87-89).  In January 2009, Wirth requested information on the investments from Laidlaw but was refused (Compl. ¶ 66).

### C.  Plaintiff Randolph

In July 2006, Randolph invested $100,000 in South Pacific based on Silverman's representations (Compl. ¶ ¶ 25-28). Silverman reported that South Pacific was a great investment opportunity (Compl. ¶  26). Randolph also made investments in various other companies totaling $1.1 million based on Silverman's representations. In January 2009, Miller requested information on the investments from Laidlaw but was refused (Compl. ¶ 70-71).

### D.  Plaintiff Seyborn

In May 2007, Seyburn invested $150,000 in South Pacific based on Cirella's representations (Compl.¶ 34). He also invested in several other companies based on Cirella's representations (Compl. ¶¶ 70-71).

Plaintiffs later learned that South Pacific never closed on the deal and lost some of its rights to build Hooters restaurants in Australia and New Zealand (Compl. ¶ 69). Plaintiffs now bring this instant action.

## III.   ANALYSIS

### A.  Fed. R. Civ. P. 12(b)(2) Motion to Dismiss

#### 1.   Standard of Review

Federal Rule of Civil Procedure 12(b)(2) allows the Court to dismiss an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The plaintiff has the burden of establishing whether the Court has jurisdiction over the defendants. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). When presented with a motion to dismiss for lack of personal jurisdiction, the Court may, in its discretion, pick between three options.  First, it may conduct an evidentiary hearing to resolve any factual issues. *McCluskey v. Belford High Sch.*, 795 F.Supp.2d 608, 615 (E.D. Mich. 2010).  Second, it may proceed to discovery. *Id.* The Court may conduct an evidentiary hearing or allow discovery if "the written submissions raise disputed issues of fact or seem to require determinations of credibility." *Id.* (quoting *Serras v. First Tenn. Bank Nat. Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989). Finally, it may decide the issue based on the pleadings and affidavits alone. *Id.*

When the Court does not conduct an evidentiary hearing, it must consider the pleadings and affidavits in the light most favorable to the plaintiff. *Lifestyle Lift Holding Co., Inc. v. Prendiville*, 768 F.Supp.2d 929, 932 (E. D. Mich. 2011). "In this circumstance, the plaintiff must

make a prima facie showing of jurisdiction; the court does not consider the controverting assertions of the party moving for dismissal." *Id*. In a diversity case, the plaintiff has established a prima facie case when he or she shows that the federal court's exercise of personal jurisdiction over the defendants is authorized by both the law of the forum state and the Due Process Clause of the Fourteenth Amendment. *Neogen Corp*., 282 F.3d at 888.

### 2.  General Jurisdiction

Plaintiffs argue that Laidlaw is subject to general jurisdiction because it has "openly" sought business from Michigan and has intentionally solicited investments from the two Michigan Plaintiffs. Laidlaw's website allows potential customers to open an account and existing customers to review their portfolios by registering usernames. Plaintiffs cite *Zippo Mfg. Co. v. Zippo DOT Com,* 952 F.Supp. 1119 (W.D. Pa. 1997), for the proposition that Laidlaw's website is "highly interactive" and provides sufficient contacts to support general jurisdiction.

Plaintiffs have not provided any facts that would support a finding of general jurisdiction on the basis of Laidlaw's website or its solicitation of investments from two Michigan residents. Plaintiffs' reliance on *Zippo* is misplaced. *Zippo* has been used to determine whether specific personal jurisdiction is appropriate under the due process clause. In fact, Sixth Circuit precedent has held that the maintenance of an accessible website alone is insufficient to confer general personal jurisdiction. *See Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) (finding that the fact that the defendant "maintain[ed] a website that [was] accessible to anyone over the Internet [was] insufficient to justify general jurisdiction"); *Brown v. Way*, No. 10-13016, 2011 WL 3555618 (E.D. Mich. Aug. 5, 2011) (reasoning that the existence of a website under normal circumstances is insufficient to form the basis for general personal jurisdiction); *King v. Ridenour*, 749 F.Supp.2d 648, 653 n.3 (E.D. Mich. 2010) ("A website must *specifically* target a

forum in order for it to serve as a basis for general jurisdiction"); *Hi-Tex, Inc. v. TSG, Inc.*, 87 F.Supp.2d 738, 743 (E.D. Mich. 2000) ("participation in a website, without more, is an insufficient basis for exercising personal jurisdiction"). The fact that Laidlaw's website allows customers to register usernames, thereby allowing Laidlaw to conduct business with Michigan residents, is also insufficient to confer general personal jurisdiction. *See Bird*, 289 F.3d at 874. The website is available to anyone in the United States. Nor does Laidlaw's solicitation of two Michigan investors, alone, rise to the level of "continuous and systematic" business with Michigan. The exercise of general jurisdiction over Laidlaw is inappropriate under these facts.

As to an individual, Michigan's long-arm statute allows the exercise of jurisdiction when the individual 1) is domiciled in Michigan, 2) is served in Michigan, or 3) consents to be sued in Michigan. MICH. COMP. LAWS. § 600.701. Defendants contend that the individual Defendants are not subject to general jurisdiction because they were not domiciled in Michigan, never consented to jurisdiction in Michigan or were served in Michigan. None of the individual Defendants appear to be domiciled in Michigan.  In fact, Defendants Hugh Ragan, Ted Fowler, Jason Russo, Todd Cirella, and Stephen Gianntonio are residents of New York. Defendant Peter Silverman is a resident of Arizona.[1] Plaintiffs do not allege in their Complaint that Defendants were served while in Michigan or consented to Michigan jurisdiction. The Court does not have general jurisdiction over the individual Defendants.

### 3.  Specific Jurisdiction

Specific or limited jurisdiction involves the defendant's contacts with the forum state. *See Conti v. Pneumatic Prods. Corp.,* 977 F.2d 978, 981 (6th Cir. 1992). The defendant's physical

---

[1] Defendants contend that Defendant Silverman is actually a resident of the United Kingdom, but the Court cannot consider the Defendants' controverting facts when determining whether a motion to dismiss for lack of personal jurisdiction is proper. Additionally, whether Silverman is a resident of the United Kingdom or of Arizona would not change the analysis.

presence in the state is not essential. *See McCluskey*, 795 F.Supp.2d at 615. In Michigan, the

Court may exercise specific personal jurisdiction over a nonresident Defendant in an action

"arising out of an act which creates any of the following relationships:"

> (1) The transaction of any business within the state.
> (2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.
> (3) The ownership, use, or possession of real or tangible personal property situated within the state.
> (4) Contracting to insure a person, property, or risk located within this state at the time of contracting.
> (5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.
> (6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.
> (7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

MICH. COMP. LAWS § 600.705.  Similarly, the Court may exercise specific personal jurisdiction

over a corporation in connection with the following acts:

> (1) The transaction of any business within the state.
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

MICH. COMP. LAWS § 600.715

"When a state's long-arm statute reaches as far as the limits of the Due Process Clause,

the two inquiries merge and the court need only determine whether the assertion of personal

jurisdiction violates constitutional due process." *Intera Corp. v. Henderson*, 428 F.3d 605, 616

(6th Cir. 2005). Given that courts have held that Michigan's long-arm statue extends to the limits

permitted by the Due Process Clause, the Court is only required to analyze whether the exercise

of jurisdiction would be permitted under the Due Process Clause. *Lifestyle*, 768 F.Supp.2d at 933.

The Sixth Circuit employs a three-part test to determine whether the exercise of personal jurisdiction would be consistent with due process: 1) the defendant has purposefully availed itself of the privilege of acting in the forum state or causing a consequence to occur there; 2) the cause of action arises out of the defendant's activities in the forum state; and 3) whether the exercise of personal jurisdiction is reasonable based on the defendant's connection to the forum state. *S. Mach. Co. v. Mahasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). There is an inference that the exercise of jurisdiction is reasonable when the first two elements are satisfied. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996).

### a.   Purposeful availment

A defendant has purposefully availed himself of the forum state when "the defendant's contacts with the forum state 'proximately result from the actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Neogen,* 282 F.3d at 889 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Purposeful availment requires more than "passive availment of Michigan opportunities." *Id*. at 890 (quoting *Khalaf v. Bankers & Shippers Ins. Co.*, 273 N.W.2d 811, 819 (Mich. 1978)). A website is sufficient to constitute purposeful availment when the defendant's website is sufficiently interactive to demonstrate that the defendant intentionally meant to interact with forum residents. *Id.* (citing *Zippo Mfg.,* 952 F.Supp. at 1124.

### i.   Laidlaw

As previously stated, Laidlaw's website allows customers to interact by registering a username in order to track their portfolios. Although the maintenance of a website is insufficient

to confer general personal jurisdiction, it may be sufficient to constitute purposeful availment for specific personal jurisdiction. *See Bird*, 289 F.3d at 874 (finding that the maintenance of a website that allowed Ohio residents to register domain names and accepted business from 4,666 Ohio residents was sufficient to satisfy the purposeful availment prong); *Neogen*, 282 F.3d at 890-91 (finding that maintaining a website that allowed Michigan residents to access test results, held itself out as welcoming Michigan business, and collected data from Michigan residents as satisfying the purposeful availment requirement).

The website alone is sufficient to satisfy the purposeful availment requirement. Laidlaw's website allows its customers to register usernames. The Sixth Circuit precedent requires more than a website that welcomes Michigan business. In *Neogen*, the defendant's website not only allowed Michigan residents to access test results and register domain names, but tracked Michigan specific business statistics. 282 F.3d at 890-91. The Sixth Circuit considered the defendant's website coupled with the defendant's other interactions with Michigan residents. *Id.* at 891. The court found that the purposeful availment requirement was met when the defendant's website was considered along with its 14 yearly anticipated Michigan customers. *Id.* at 891-92 ("The proper test for personal jurisdiction is not based on a 'percentage of business' analysis…but rather on whether the absolute amount of business conducted by [the defendant] in Michigan represents something more than 'random, fortuitous, or attenuated contacts' with the state") (quoting *Burger King*, 471 U.S. at 475). It appears that this plus factor is present here. Laidlaw solicited over a million dollars in investments from the Michigan Plaintiffs. Laidlaw reached out to the Michigan Plaintiffs to invest. Such contacts are not random, fortuitous or attenuated. Laidlaw's contacts satisfy the first prong of the due process analysis.

ii.      Individual Defendants

9

Plaintiff, James Randolph, a resident of Arizona, alleges the following against Defendant Silverman, a resident of New York: fraud and misrepresentation, negligent misrepresentation, breach of fiduciary duty, unjust enrichment, and accounting. Plaintiff, Arthur Wirth, a resident of Illinois, alleges the following against Defendants Fowler, Reagan, and Giannantonio, residents of New York: fraud and misrepresentation, negligent misrepresentation, breach of fiduciary duty, unjust enrichment, and accounting. The alleged actions that form the basis of these claims did not occur in Michigan nor was there a consequence that occurred in Michigan. The Complaint is completely devoid of any allegations connected to Michigan in any way.[2] These Defendants have not purposefully availed themselves of the privileges of doing business in Michigan in any way. Wirth contends that he and Miller, while in Michigan, participated in conversations with the Defendants, not including Silverman, regarding the return of their investments. Plaintiff Wirth's random act of calling the Defendants while in Michigan, alone, is insufficient to demonstrate that the *Defendants* purposefully availed themselves of the privileges of doing business in Michigan. The Court dismisses Defendants Silverman, Fowler, Reagan, and Giannantonio for lack of personal jurisdiction.

As to the remaining individual Defendants, Plaintiffs allege that Defendants Russo and Cirella purposely availed themselves of the privileges of doing business in Michigan when they directly contacted Michigan Plaintiffs Miller and Seyburn and the Plaintiffs made investments through Defendants Russo and Cirella. Both Plaintiffs were contacted by Defendants Russo and Cirella on at least a few occasions by telephone or email. These phone calls were the basis of Plaintiffs decision to make investments into the business venture.

The Defendants did purposely avail themselves of doing business in Michigan by

---

[2] As to Defendants Fowler, Reagan, and Giannantonio, Plaintiffs attempt to assert a conspiracy theory in its Response. However, the Complaint itself does not make any claims based on a conspiratorial relationship.

soliciting these investments from Michigan residents. Defendants initiated the conversations with the Michigan Plaintiffs in order to convince them to invest. Through the acts of calling and emailing the Michigan Plaintiffs in order to create a continuous relationship, Defendants acts were more than "random, fortuitous, and attenuated." *See King*, 749 F.Supp.2d at 656 ("simple correspondence and telephone calls to the forum that facilitate formation and performance of the contract are not enough"); *see also In re Trade Partners, Inc.*, MDL No. 1846, 2008 WL 3979238, *5 (W.D. Mich. Aug. 22, 2008) (finding that an investor had purposely availed himself of California when he solicited California investments). Here, the Defendants actively reached out to Michigan in order to secure investments. Such contact was more than simple correspondence to facilitate formation or performance of a contract. The first prong of the due process analysis is satisfied as to Defendants Russo and Cirella.

### b.   Cause of arising from activities in the forum

The second prong of the due process analysis is also met. The cause of action arises out of Laidlaw and Defendants Russo and Cirella's connection with Michigan. Specifically, they reached out to the Michigan Plaintiffs through telephone and email to solicit investments. Defendants contend that the website is insufficient to satisfy this prong of the due process analysis because the Michigan Plaintiffs are not alleging that their decision to invest arose from their use of the website. However, Plaintiffs do allege that Laidlaw and its employees Russo and Cirella reached out to Plaintiffs to obtain investments and base their claims on these actions. This is sufficient to satisfy t prong of the due process analysis.

### c.   Reasonableness

There is an inference that the exercise of jurisdiction is reasonable when the first two elements are satisfied. *CompuServe*, 89 F.3d at 1268. "Generally, when considering whether it is

reasonable to exercise personal jurisdiction over a non-resident defendant, a court must consider several factors including the following: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp.*, 428 F.3d at 618.

Laidlaw and Defendants Cirella and Russo appear to have satisfied the first two prongs of the due process analysis. All three Defendants are residents of New York, with Laidlaw being a United Kingdom corporation. It would be a burden on the Defendants to resolve their dispute in Michigan. However, Michigan has an interest in ensuring that the investments that its residents engage in are free of fraud and misrepresentation by non-residents. Additionally, Defendants have not indicated any unique burden that would defeat an inference of reasonableness. The exercise of personal jurisdiction is reasonable.

The Court finds that it has personal jurisdiction over Laidlaw and Defendants Cirella and Russo.  Defendants Peter Silverman, Ted Fowler, Hugh Reagan, and Stephan Giannantonio are dismissed for lack of personal jurisdiction. The Court will now turn to the Defendants' motion to dismiss as to Laidlaw, Cirella, and Russo.

### B.  Fed. R. Civ. P. 8, 9 & 12(b)(6) Motion to Dismiss

#### 1.  Standard of Review

Federal Rules of Civil Procedure 12(b)(6) governs a motion to dismiss for failure to state a claim upon which relief can be granted. A motion to dismiss tests the legal sufficiency of the plaintiff's Complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986).  The court must accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426, 429 (6th Cir. 2001). The Court must determine whether it is beyond a doubt that the plaintiff can prove no set of facts

in support of his claims that would entitle him to relief.  *Id.* A complaint that only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-1951 (2009).  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554,557 (2007)). Rather, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic,* 550 U.S. at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.

### 2.  Fraud

Defendants allege that Plaintiffs have not pled their fraud claims with the requisite particularity. Federal Rule of Civil Procedure 9(b) requires "a party [to] state with particularity the circumstances constituting fraud."  To satisfy Rule 9(b), the complaint must identify the allegedly fraudulent statements, the speaker, when and where the statements were made, and why the statements were fraudulent.  *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (quoting *Gupta v. Terra Nitrogen Corp.*, 10 F.Supp.2d 879, 883 (N.D.Ohio 1998)). "At a minimum, [a plaintiff] must allege the time, place and contents of the misrepresentations upon which [he or she] relied." *Id.* Michigan fraud requires proof that (1) the defendant made a material representation; (2) the representation was false; (3) the defendant knew the representation was false or made the representation recklessly as a positive assertion; (4) the defendant made the statement intending that the plaintiff would rely on it; (5) the plaintiff reasonably relied on it; and (6) the plaintiff was injured as a result. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100-1101 (6th Cir. 2010) (citing *Cummins v. Robinson Twp.,* 770 N.W.2d 421, 435

(2009)).

Defendants contend that Plaintiffs have failed to identify the time, place, or content of the misrepresentation. Defendants further argue that the representations by Defendants as to the quality and growth of the investment were only puffery or a future promise of performance.

An action for fraud must be based on a statement relating to a past or existing fact. *Hi-Way Motor Co. v. International Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976). "Future promises are contractual and do not constitute fraud." *Id.* In addition, a claim for fraud cannot be based on an opinion or "puffery." *Van Tassel v. McDonald Corp.*, 407 N.W.2d 6, 8 (Mich. Ct. App. 1987). "[A] mere honest expression of opinion will not, although proved erroneous, be regarded as fraud." *Id.* (quoting *Graham v. Meyers*, 115 N.W.2d 621, 623 (Mich. 1952). However, a statement is not an opinion and is actionable if the defendant has personal knowledge of the property. *Foreman v. Foreman*, 701 N.W.2d 167, 175 (Mich. Ct. App. 2005). When the means of determining the truthfulness of the representation is available to the plaintiff and the defendant has not prohibited the degree of the means of learning the truthfulness, a plaintiff cannot sustain an action for fraud. *Webb v. First of Michigan Corp.*, 491 N.W.2d 851, 854 (Mich.App. 1992).

Russo and Cirella's statements that Plaintiffs were making a "great investment," a "huge investment and business opportunity," and the like appear to be nothing more than a professional opinion or puffery. *See Van Tassel*, 407 N.W.2d at 8 (noting that "it is within normal expectations of commercial dealing for salesmen to 'hype' their products beyond objective proof"); *Crofton v. Bank of America Home Loan*, No. 11-10124, 2011 WL 1298747, *8 (E.D. Mich. Mar. 31, 2011) (finding that defendant's statement that plaintiff was getting the "best interest rate" is mere opinion and not actionable as fraud).  Cirella and Russo also made

14

statements regarding the growth or return of the investments and when the investments would be repaid. Such language constitutes a future promise, which is not actionable for fraud.[3] *See Webb v. First of Michigan Corp.*, 491 N.W.2d 851, 853 (Mich. Ct. App. 1992) ("we have little difficulty concluding that the statement regarding the eighteen percent interest return rate was nothing more than a promise of future benefit that cannot, by law, constitute fraud"); *Van Tassel*, 407 N.W.2d at 9 (Mich. Ct. App. 1987) (finding that the defendant's statements regarding the plaintiff's "bright future" were "purely speculation as to future events"). The statement regarding when the loan would be repaid is only a future promise of performance, which is contractual in nature. *See Gorman v. Soble*, 328 N.W.2d 119, 124 (Mich. Ct. App. 1982); *Hi-Way Motor*, 247 N.W.2d at 816. These statements are insufficient to maintain an action for fraud under Michigan law.

Defendants also allege that Plaintiffs have failed to state with particularity which statements are attributed to which Defendants, that those statements were false, that the Defendants made those statements knowing that they were false, or that the statements were made knowing that Plaintiffs would rely on them. The Complaint does attribute certain statements to Russo or Cirella. However, the Complaint does not indicate what representations caused Miller to make the October 2007 bridge loan or what Defendant made a representation to Seyburn. Nor does the Complaint allege any facts showing that the Defendants knew that their statements were false. Instead there is a formulaic recitation of the elements of fraud, including that the statements were made with the intention that Plaintiffs would rely on them. As to

---

[3] Plaintiff relies on a string of Sixth Circuit cases for the proposition that opinions and forward-looking statements are "not subject to safe harbor provisions or defenses of puffery where such statements constitute misrepresentations of fact or lack any meaningful cautionary language." *See Helwig v. Vencor, Inc.*, 251 F.3d 540, 554-44 (6th Cir. 2011); *In re Federal-Mogul Corp., Sec. Litig.*, 166 F.Supp.2d 559, 565 (E.D. Mich. 2011); *In re Lason, Sec. Litig.*, 143 F.Supp.2d 855, 861 (E.D. Mich. 2001); *Mayer v. Mold*, 988 F.2d 635, 639 (6th Cir. 1993). These cases, however, deal with a claim of securities fraud under the Securities Exchange Act. Plaintiffs have pled common law fraud.

15

Randolph, the Complaint is void of any statement made that induced his investments or the identity of that speaker.

Plaintiffs argue that Defendants made forward-looking statements to induce Plaintiffs to invest in businesses that were not viable. Plaintiffs also imply that Defendants suppressed the truth of their statements. A claim of fraud may be actionable when the defendant makes a representation knowing that it he has no intention of carrying it out. *See Gorman*, 328 N.W.2d at 124. Nevertheless, Plaintiffs have not pled that Defendants made forward-looking statements regarding the return on the investment or when it would be repaid knowing that they had no intention to perform nor that they suppressed the truth regarding the investments. Plaintiffs merely state that the statements were false or made with reckless disregard of their truth. Although it appears that Defendants statements were mere expressions of opinion, Plaintiffs are entitled to amend their Complaint to allege any facts to support their claim that Defendants knowingly suppressed the truth of their statements or intended to induce Plaintiffs to invest knowing that South Pacific was not viable. Nothing in the Complaint suggests that Cirella, Russo, or Laidlaw made these statements knowing that the investments were not viable or would not produce the return indicated. Further, Plaintiffs have failed to indicate what statement induced Randolph to invest, when those statements were made, and who made them. However, Randolph makes his claim against Silverman, over whom the Court has no jurisdiction. The Court will allow Plaintiffs an opportunity to amend their Complaint to address any deficiencies in their fraud allegations. The Court, however, will not allow Randolph leave to amend his fraud claim.

### 3. Negligent Misrepresentation

Defendants contend that Plaintiffs fail to sufficiently plead a claim for negligent

misrepresentation under Michigan law or the Federal Rule of Civil Procedure 8. Negligent misrepresentation requires that a party justifiably relies to his detriment on information provided without reasonable care by one that owed the plaintiff a duty of care. *Law Offices of Lawrence J. Stockler, P.C. v. Rose*, 436 N.W.2d 70, 81 (Mich. Ct. App. 1989). The plaintiff must prove that 1) the defendant made a material misrepresentation; 2) the representation was unintentionally false; 3) the representation was made in connection with the contract's formation; 4) the parties were in privity of contract; 5) the plaintiff relied on the defendant's representation; 6) plaintiff suffered damages; and 7) plaintiff's damages inured to the benefit of the defendant. *Yaldu v. Bank of America Corp.*, 700 F.Supp.2d 832, 845 (E.D. Mich. 2010). Recovery cannot be based on a remote, contingent or speculative injury. *Law Offices*, 436 N.W.2d at 81. The plaintiff is not required to prove that the defendant knew or should have known that the representation was false or that defendant intended the plaintiff to rely on it. *Roberts v. Saffell*, 760 N.W.2d 715, 720 (Mich. Ct. App. 2008).

The Federal Rules do not require Plaintiffs to plead this claim with a heightened level of particularity. *See* Fed. R. Civ. P. 8(a). However, Federal Rule of Civil Procedure 8(a) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Plaintiffs have alleged that Defendants statements were false, that Plaintiffs justifiably relied on those statements, that those statements harmed Plaintiffs, and that Defendants benefited from those investments. The Court finds that Plaintiffs have sufficiently pled negligent misrepresentation. However, as to Randolph, the Court dismisses his claim for negligent misrepresentation as Silverman is no longer a party.

### 4. Unjust Enrichment

Defendants contend that Plaintiffs' claims for unjust enrichment are timed barred,

precluded based on the existence of a valid contract, and insufficiently pled. To maintain an action for unjust enrichment, a plaintiff must prove 1) the receipt of a benefit by the defendant from the plaintiff and that 2) an inequity resulted to the plaintiff when the defendant retained the benefit. *Belle Isle Grill Corp. v. Detroit*, 666 N.W.2d 271 (Mich. Ct. App. 2003). The law will imply a contract to prevent unjust enrichment only if there is no express contract covering the subject matter. *Bye v. Nationwide Mut. Ins. Co.*, 733 F.Supp.2d 805, 830 (E.D. Mich. 2010).

Claims for unjust enrichment are the equitable counterpart to a claim for breach of contract and Michigan courts have held that statute of limitations apply to equitable claims by analogy. *Romeo Inv. Ltd. v. Michigan Consol. Gas Co.*, No. 260320, 2007 WL 1264008, *8 (Mich. Ct. App. May 1, 2007); *Underwood v. Albery*, No. 292151, 2010 WL 4977977, *2 (Mich. Ct. App. Dec. 7, 2010). "Thus, when an equitable claim would provide relief that is analogous to the relief available under a similar legal claim, courts typically apply the legal claim's statute of limitations to the equitable claim as well." *Id.* Applying these principles, Michigan courts have held that the applicable statute of limitations for a claim of unjust enrichment is six years. *Id.*

First, Defendants rely on *Corner Holdings v. Rich Coast, Inc.*, No. 97–60388, 1999 WL 33617501 (E.D. Mich. Jan. 22, 1999) to assert that the statutes of limitations for a claim of unjust enrichment is three years. However, that action was based on an injury to person or property under M.C.L. § 600.5805(8), which does not depend on the existence of a contract. *Id.* at *3. The applicable statute of limitations here is six years. *See* MICH. COMP. LAWS § 600.5807. Plaintiffs' claims are timely.

Second, Defendants argue that Plaintiffs' claim for unjust enrichment is precluded because a valid contract exists between the parties.[4] Plaintiffs contend that their Complaint does

---

[4] Defendants provide poor copies of customer agreements allegedly signed by Plaintiffs, governing the relationship and duties of the respective parties. Plaintiffs object to Defendants' attachment of the contracts to their motion to

not include a breach of contract claim. There is a question of fact as to whether a contract existed between the parties and the terms and duties implied under the contract. Plaintiffs have not alleged that a contract existed between the parties.

Finally, Defendants argue that Plaintiffs' unjust enrichment claims are improperly pled by including conclusory statements that Defendants benefited from a windfall of commissions and compensations from the investments. Plaintiffs have pled that Defendants were unjustly enriched by the investments and that Plaintiffs are entitled to recover the value of the benefit provided to Defendants. These allegations are formulaic and do not show why Plaintiffs are entitled to relief. *See Twombly*, 550 U.S. at 555. The Court will allow Plaintiffs leave to amend their Complaint to indicate whether a contract existed between the parties and the terms of that contract and the specific facts that support a claim for unjust enrichment.

### 5. Breach of Fiduciary Duty

Defendants argue that Plaintiffs' breach of fiduciary duty claims should be dismissed because they are time barred and insufficiently pled. "[A] fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one upon the judgment and advice of another" and "[r]elief is granted when such position of influence has been acquired and abused, or when confidence has been reposed and betrayed." *Vicencio v. Ramirez*, 536 N.W.2d 280, 284 (Mich. Ct. App. 1995). [5] This placement of trust must be reasonable and is deemed

---

dismiss. When presented with a motion to dismiss, the Court may consider the Complaint and exhibits attached to the Complaint, public records, items in the record of the case, and exhibits attached to the defendant's motion to dismiss as long as they are referenced in the Complaint and central to the plaintiff's claims. *Bassett v. Nat'l Collegiate Ass'n*, 528 F.3d 426, 430 (6th Cir. 2006). The Court may consider items that "verify the complaint" and do "not rebut, challenge, or contradict anything in the plaintiffs' complaint." *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993); *see also Armengau v. Cline*, 7 Fed.Appx. 336, *5 (6th Cir. 2001) ("extrinsic materials [that] merely 'fill in the contours and details' of a complaint, …add nothing new and may be considered without converting the motion to one for summary judgment") (quoting *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997)). Here, Plaintiffs have not alleged that a contract existed and do not appear to base their claims on a breach of contract theory. Defendants' attachment of a contract directly contradicts Plaintiffs' Complaint. The Court will not consider it.

[5] In the federal securities context, a fiduciary duty rises between a broker and client when there is a discretionary

unreasonable if the client and nonclient's interest are adverse or potentially adverse. *Prentis Family Found. v. Barbara Ann Karmanos Cancer Institute*, 698 N.W.2d 900, 906 (Mich. Ct. App. 2005). A breach of fiduciary duty is a tort claim subject to M.C.L. § 600.5805 and is governed by a statute of limitations of three years. *See Miller v. Magline*, 256 N.W.2d 761 (Mich. 1977). A claim for breach of fiduciary duty accrues when the wrong was done "regardless of the time when damage results." *Id.* at M.C.L. § 600.5827.  The Michigan Supreme Court has interpreted this to mean that the claim accrues when all the elements of the cause of action have occurred and can be alleged in a complaint, when there is an actionable wrong. *Connelly v. Paul Ruddy's Equipment Repair & Service Co.*, 200 N.W.2d 70, 72 (Mich. 1972).  "Damages may be obtained for a breach of fiduciary duty when a 'position of influence has been acquired and abused, or when confidence has been reposed and betrayed.'" *Prentis Family Foundaiton*, 698 N.W.2d at 908 (quoting *Vicencio v. Ramirez*, 508, 536 N.W.2d 280, 284 (Mich. Ct. App. 1995)). Therefore, the cause of action accrues when Plaintiff knows or should have known of the breach of the fiduciary duty. *Id.*; *see also Boyle v. General Motors*, 661 N.W.2d 557, 559 (Mich. 2003) (holding that a claim for fraud accrues when the fraud is committed not when the plaintiff discovers it); *Stephens v. Dixon¸*536 N.W.2d 755, 758 (Mich. 1995) (holding that an action in negligence accrues when the plaintiff is injured or should know they are injured and not when the plaintiff later discovers the consequences of the injury).

---

account or an account where the broker determines what investments are made. *First of Mich. Corp. v. Swick*, 894 F. Supp. 298, 301 (E.D. Mich. 1995). In a non-discretionary account, which requires the client to determine the investments to make, there is a limited duty[5] to a client. *Davis v. Keyes*, 859 F.Supp. 290, 294 (E.D. Mich. 1994). "No fiduciary relationship arises on the basis of duties owed to non-discretionary account customers." *Id.*
In a discretionary account, a broker has a duty to "(1) manage the account in a manner directly comporting with the needs and objectives of the customer as stated in the authorization papers or as apparent from the customer's investment and trading history; (2) keep informed regarding the changes in the market which affect his customer's interest; (3) keep his customer informed as to each completed transaction; and (5) explain forthrightly the practical impact and potential risks of the courses of dealing in which the broker is engaged." *Davis v. Keyes*, 659 F.Supp.2d 290, 294 (E.D. Mich. 1994). However, Plaintiff relies on Michigan common law breach of fiduciary duty. Securities law is not at issue here.

As to Plaintiff Miller and Seyburn, their claims for breach of fiduciary duty are not time barred. This action was filed on May 11, 2011. Miller alleges that when his loan was not repaid in April 2008, Cirella and/or Russo told him that it would be paid on June 1, 2008. On May 31, 2008, Cirella and/or Russo communicated that the loan would not be repaid as promised. As to Seyburn, he made a demand on Cirella to provide an accounting in October 2008 and the demand was not fulfilled. At that time Seyburn should have known that there was a possible breach of his fiduciary trust and could have brought suit by October 2011. His claim of breach of fiduciary duty is not time barred.

However, it does appear that Wirth's breach of fiduciary duty claim is time barred as against Russo, Cirella, and Laidlaw. Wirth was told that the loan would mature in April 2008 by Fowler and Regan (who have been dismissed from this action). Wirth communicated with Gianntonio, Fowler, and Regan from mid-April 2008 until August 2008 inquiring about when the loans would be repaid. The Court does not have jurisdiction over these defendants. The majority of Wirth's communication was with Gianntonio. Wirth should have known in April 2008 that defendants had breached their fiduciary duty to him. If his claim accrued in April 2008, he would have until April 2011 to file an action. His claim for breach of fiduciary duty is time barred.

As to Randolph, he alleges a breach of fiduciary duty against Laidlaw and Silverman. The Court does not have personal jurisdiction over Silverman. As to Laidlaw, the Complaint only indicates that Randolph made investments in 2006. The Complaint alleges no other actions that would indicate why Randolph should not have known about the breach of fiduciary duty in April 2008 when South Pacific did not close. Randolph's claim against Laidlaw is time barred.

**6.  Accounting**

Defendants argue that Plaintiffs did not adequately plead a claim for accounting and know how much they invested and lost. Plaintiffs, however, define their claim for accounting as simply an action to compel Defendants to account for and pay money owed to them. Plaintiffs only rely on Black's Law Dictionary for support.

In Michigan, a claim for accounting is equitable and must "be determined from the facts pled in the plaintiff's complaint rather than from the prayer for relief." *Boyd v. Nelson Credit Centers, Inc.*, 348 N.W.2d 25, 27 (Mich. Ct. App. 1984). A plaintiff may bring an action for accounting if the plaintiff is uncertain of the amounts he or she is entitled to recover. *Basinger v. Provident Life & Acci. Ins. Co.*, 239 N.W.2d 735, 738 (Mich. Ct. App. 1976). An accounting claim requires mutual demands, transactions on one side, and payments on the other side. *Id.* A claim for accounting is not actionable if all transactions are one side or when there is a specific sum due under a contract. *Id.* Accounting is inappropriate when discovery could determine the amounts at issue. *Id.* Additionally, there cannot be a claim for accounting when there is an adequate remedy at law. *Basinger*, 239 N.W.2d at 738.

Plaintiffs have not alleged that there is no adequate remedy at law and already know the exact nature of the amounts lost from the investment. Discovery would determine the exact sum due even if Plaintiffs were unaware. It appears that Plaintiffs' claims for accounting are inappropriate. The Court dismisses all accounting claims.

## IV.   CONCLUSION

**IT IS ORDERED** that the Defendants' Motion to Dismiss Pursuant to Rule 12(b)(2) **[Docket No. 15, filed August 15, 2011]** is **GRANTED IN PART**. Defendants PETER SILVERMAN, TED FOWLER, HUGH REAGAN, and STEPHAN GIANNANTONIO ARE **DISMISSED** from this action for lack of personal jurisdiction.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Pursuant to Rules 8, 9, and 12(b)(6) **[Docket No. 16, filed August 16, 2011]** is **GRANTED IN PART**. The Court will give the parties leave to amend their fraud claims [Count I, VI, and XI] and unjust enrichment claims [Count IV, IX, and XIV] claims. Counts XVI, XVII, and XIX are dismissed. The Court dismisses Plaintiff Wirth and Randolph's breach of fiduciary duty [Counts XIII and XVIII] claims as timed barred. The Court further dismisses all accounting claims [Counts V, X, XV and XX). The parties must properly amend within 14 (fourteen) days of this order.


Dated:  March 29, 2012                    s/Denise Page Hood
                                          DENISE PAGE HOOD
                                          UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, Thursday, March 29, 2012, by electronic and/or ordinary mail.

                                          s/Julie Owens
                                          Case Manager