UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHELDON MILLER, BRUCE SEYBURN,
ARTHUR WIRTH and JAMES RANDOLPH,

    Plaintiffs,

v.                Case No. 11-12086
                Honorable Denise Page Hood

LAIDLAW & COMPANY (UK) LTD., an
English corporation, HUGH REGAN, TED
FOWLER, JASON RUSSO, TODD CIRELLA,
STEPHEN GIANNANTONIO, and PETER
SILVERMAN,

    Defendants.
_____/

## ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

  This matter is before the Court on Defendants' Motion to Dismiss Plaintiffs' Amended Complaint. For the reasons stated below, Defendants' Motion to Dismiss Plaintiffs' Amended Complaint is GRANTED IN PART.

**I. BACKGROUND**

  Plaintiffs Miller, Seyburn and Wirth collectively invested approximately 2.4 million dollars in various ventures, specifically South Pacific Partners, Ltd., through Laidlaw [Amend. Compl., Docket No. 32, ¶¶ 12, 14-18]. Although the Court previously laid out the facts in great detail, it will outline the facts relevant to each Plaintiff.

  **A. Sheldon Miller**

  Jason Russo, Laidlaw's Senior Managing Member and Co-Head of Product Sales, contacted Miller discuss investing in South Pacific. Russo indicated that it was a "great

investment," it would yield a 3.7 percent return, and that it was a "done deal" that South Pacific would acquire R.M.D. Corp's 39 Hooter's restaurants [Docket No. 32 ¶¶ 22, 23]. Miller then invested $250,000 [Docket No. 32 ¶ 24].

Russo and Cirella contacted Miller to provide a short-term bridge loan to South Pacific in connection to R.M.D. Corp's acquisition of 39 Hooter's restaurants [Docket No. 32 ¶ 30]. Russo and Cirella maintained that the closing of the deal was being pushed back for tax purposes but that it was a "done deal." *Id.* The loan was to have a maturity date of April 1, 2008 with nine percent interest and a warrant to purchase an ownership interest in South Pacific [Docket No. 32 ¶ 31]. Miller executed a Note and Warrant Purchase Agreement loaning South Pacific $500,000 [Docket No. 32 ¶ 32].

Russo and Cirella contacted Miller by email regarding an additional $500,000 loan [Docket No. 42, 43]. After expressing hesitancy over providing the loan, Russo indicated that both Miller's loans would be repaid by April 15, 2008 [Docket No. 32, 44, 45]. Miller provided the additional loan [Docket No. 32 ¶ 46].

When the principal loan was not repaid, Miller contacted Russo and/or Cirella in April 2008 and was told that the loan would be repaid on June 1, 2008 [Docket No. 32 ¶ 51]. Miller and Russo and/or Cirella engaged in subsequent conversations and the date of payment was moved back several times [Docket No. 32 ¶¶ 51, 52, 54-58]. Starting in January 2009, Miller requested information on the investments from Laidlaw but was refused [Docket No. 32 ¶ 58].

### B. Bruce Seyburn

Todd Cirella, Laidlaw's Senior Managing Director and Head of International Business Development, told Seyburn that South Pacific was a "huge investment and business opportunity"

and, in response to Seyburn's concerns regarding capital, indicated that $25 million in non-refundable capital was being put in South Pacific [Docket No. 32 ¶ 26]. Seyburn then invested $150,000 [Docket No. 32 ¶ 27-29]. In October 2008, Seyburn demanded from Cirella information regarding his investments but was not provided this information [Docket No. 32 ¶ 59]. Seyburn also invested in several other ventures based on Cirella's representations that the ventures were "safe investments" with "no risks" because "the companies were flush with cash" [Docket No. 32 ¶ 62].

### C.     Arthur Wirth

Wirth was contacted by several Laidlaw employees, including Russo, to provide a $500,000 bridge loan to South Pacific with a maturity date of April 1, 2008 [Docket No. 32 ¶ 33]. Russo and other Laidlaw employees represented that R.M.D. Corp.'s acquisition of Hooters restaurants were a "done deal" and the closing deal was being pushed back for tax purposes [Docket No. 32 ¶ 34]. Russo indicated that if he had the money to invest he would [Docket No. 32 ¶ 35]. Based on the representations of another Laidlaw employee, Wirth provided the loan [Docket No. 32 ¶¶ 36-38].

A South Pacific investment broker contacted Wirth to provide an additional loan and he also represented that the acquisition by R.M.D. Corp. was a "done deal" [Docket No. 32 ¶ 40]. Russo and other Laidlaw employees affirmed that this additional loan was a good investment and would be repaid by April 1, 2008. [Docket No. 32 ¶ 41]. They further indicated that the acquisition was a "done deal" and the closing date was pushed back for tax purposes. *Id.* Wirth then provided an additional $500,000 loan based on these representations [Docket No. 32 ¶ 42].

When the maturity date for the loans passed, Wirth engaged in a series of conversations with other Laidlaw employees regarding repayment of the loans and these employees indicated

3

that they were looking into Wirth's investment, which would be paid any day [Docket No. 32 ¶¶ 49, 50]. Beginning in January 2009, Wirth demanded information on the investments from Laidlaw but was refused [Docket No. 32 ¶ 58].

Wirth also invested $3.1 million in several other businesses based on the representations of other Laidlaw employee representations, including a statement that one business would receive lucrative contracts based on its political connections and that that his return would be three or four times his investment for another business [Docket No. 32 ¶¶ 64-81]. Concerning a separate investment, Russo and Cirella indicated that they would invest if they had the money [Docket No. 32 ¶ 68]. Plaintiffs later learned that South Pacific never acquired R.M.D. Corp. and had lost some of its rights to build Hooters restaurants in Australia and New Zealand [Docket No. 32 ¶ 61].

On March 29, 2012, the Court granted in part Defendants' Motion to Dismiss pursuant to Rule 12(b)(2) and Motion to Dismiss pursuant to Rules 8, 9, and 12(b)(6). Pursuant to the Court's Order, Plaintiffs filed an Amended Complaint on April 12, 2012. Miller asserts fraud and misrepresentation, negligent misrepresentation, breach of fiduciary duty, and unjust enrichment against Laidlaw, Russo, and Cirella. Seyburn asserts fraud and misrepresentation, negligent misrepresentation, breach of fiduciary duty, and unjust enrichment against Laidlaw and Cirella. Wirth brings fraud and misrepresentation, negligent misrepresentation and unjust enrichment against Laidlaw, Russo, and Cirella. This motion to dismiss followed.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. Accepting all factual allegations as true, the court will review the complaint in the light most

favorable to the plaintiff.[1] *Eidson v. Tennessee Dep't of Children's Servs*, 510 F.3d 631, 634 (6th Cir. 2007). To survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

## III.   ANALYSIS

### A.   Claims Against Laidlaw

Defendants argue that all claims against Laidlaw should be dismissed because Plaintiffs have failed to allege any statements made by Laidlaw or adequately pled that Laidlaw is vicariously liable. *See Helsel v. Morcom*, 555 N.W.2d 852, 855 (Mich. Ct. App. 1996). Plaintiffs

---

[1] In deciding a motion to dismiss, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the Complaint and central to the claims contained therein." *Bassett v. Nat'l Collegiate Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The Court cannot consider items that would refute the factual allegations in Plaintiff's Complaint. *See Mediacom Southeast LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396, 2012 WL 678166 (6th Cir. Mar. 2, 2012) (reversing trial court grant of motion to dismiss when trial court considered settlement agreement that directly conflicted with allegations made in the complaint). Defendants attach a chart to aid the Court in organizing who made what assertions and as to what investments. Defendants also attach a press release to support their contention that Plaintiffs could have determined the truth of the assertions. Plaintiffs attach a letter from a partner at South Pacific explaining the precarious state of investments. The Court will not consider any exhibit that refutes any factual allegation in Plaintiffs' Amended Complaint. Given that Defendants are attempting to show that Plaintiffs could have investigated the assertions, which is contrary to Plaintiffs' allegations, the Court will not consider Defendants' exhibits.

argue that these matters are the law of the case and the Amended Complaint specifically alleges that Russo and Cirella and other individuals were Laidlaw employees and that their investments went through Laidlaw. Defendants counter that Plaintiffs fail to allege that the Laidlaw employees' actions were done within the scope of employment.

The Court finds that law of the case governs the claims as to Laidlaw. The doctrine of the law of the case provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Scott v. Churchill*, 377 F.3d 565, 569–70 (6th Cir. 2004) (quoting *Arizona v. California,* 460 U.S. 605, 618 (1983)). The doctrine precludes the reconsideration of issues that the Court has decided "either explicitly or by necessary inference from the disposition." *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (quoting *Coal res., Inc. v. Gulf & Western Indus., Inc.*, 865 F.2d 761, 766 6th Cir. 1989). The doctrine of the law of the case seeks to prevent the relitigation of issues that are already settled. *United States v. Todd*, 920 F.2d, 399, 403 (6th Cir. 1990). The Court may reconsider a ruling in three extraordinary circumstances: substantially different evidence is raised at a subsequent trial; there is a subsequent contrary rule of law made by a controlling authority; or the decision is clearly erroneous and would work manifest injustice. *Hanover Ins. Co. v. American Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997).

The Court already determined in its March 29th Order that Plaintiffs had sufficiently pled its claims as to Laidlaw. The Court will not revisit that argument here. Defendants have not provided any new controlling authority or otherwise shown that the Court's ruling was clearly erroneous and would work a manifest injustice. The Court will allow Plaintiffs to proceed with their claims against Laidlaw.

Moreover, it appears that the Plaintiffs' claims are sufficient at this stage in litigation under the doctrine of *respondeat superior*, which imposes liability on an employer for the employee's wrongful acts when the acts were committed within the scope of employment. *Rogers v. J.B. Hunt Transport, Inc.*, 649 N.W.2d 23, 26 (Mich. 2002). Although Plaintiffs do not specifically allege within their Amended Complaint that the Laidlaw employees were acting in the scope of their employment, it is reasonable to conclude for the purpose of a motion to dismiss that the Laidlaw employees were acting within the scope of employment from the factual allegations in the Amended Complaint. Plaintiffs describe the respective titles of the Laidlaw employees and that Laidlaw is an investment firm. Plaintiffs further make sufficient factual allegations that Laidlaw employees contacted Plaintiffs in order to invest. Whether this contact was actually done within the scope of employee is a factual determination that the Court will not make at this time. It appears sufficient that Plaintiffs have alleged that there was an employee relationship and that the alleged wrongdoing was in connection to the duties of this employee-employer relationship.

### B. Fraud and Negligent Misrepresentation

Defendants argue that the assertions that Plaintiffs rely on constitute puffery or a promise of future performance. They contend that the statements of "done deal" and that an investment would be made in South Pacific referenced future performance. As to the statements such as the investments were "safe" and had "no risk" and the companies were "flush with cash," these statements were puffery or opinion. Defendants assert that even if the statement referred to an existing or past fact, Plaintiffs could have easily verified the information. Defendants further note that, despite the Court's previous Order, Plaintiffs have not provided any facts showing that Defendants suppressed the truth of their statements or intended Plaintiffs to invest knowing that

7

the investments were not viable.

In its prior order, the Court noted that the statements on which Plaintiffs relied appeared to be only puffery or promises of future performance, but allowed Plaintiffs to amend their Complaint to indicate that Defendants knew that the investments were not viable. Plaintiffs are correct that state of mind may be alleged generally. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, and other conditions of a person's mind may be alleged generally"). Plaintiffs allege that the statements were false and/or made with reckless disregard for their truth. However, Plaintiffs still generally fail to allege any underlying facts showing that the statements were false when made.

However, as the Court already pointed out, the statements on which the Plaintiffs rely are fatal to their Amended Complaint. Plaintiffs rely on several statements that appear to be nothing more than future promises or opinion. As the Court noted previously, a future promise is not actionable under fraud. *See Hi-Way Motor Co. v. International Harvester Co.,* 247 N.W.2d 813, 816 (Mich. 1976). Miller relied on statements made by Russo and Cirello that the R.M.D. Corp. acquisition was a "done deal." The statement was made in reference to a closing that had not happened and was pushed back due to tax concerns. The closing could not have been a "done deal" because it had not happened yet. Wirth relies on a statement that his investment would return 50,000 warrants and that a company would receive lucrative contracts due to political connections. Once again, these statements do not relate to existing or past facts but events which may or may not happen in the future. Fraud must relate to a past or existing fact. *Hi-Low Motor*, 247 N.W.2d at 816. Plaintiffs cannot rely on future promises of performance to assert a claim for fraud. The Court finds that these statements are not actionable and dismisses the fraud claims

to the extent that they rely on future promises. For the same reasons, the Court further finds that Plaintiffs' negligent misrepresentation claims fail to the extent that they rely on these statements.

Plaintiffs also rely on several statements that appear to amount to nothing more than an opinion or puffery. The Court pointed this out in its prior Order. Any statement that the investments were "huge," "good," "profitable," "safe," and the like are, as the Court previously noted, matters of opinion or puffery and are not actionable for fraud. *See Van Tassel v. McDonald Corp.*, 407 N.W.2d 6, 8 (Mich. Ct. App. 1987). Plaintiffs' Amended Complaint does not remedy the issue. The Court finds that these statements are not actionable for fraud or negligent misrepresentation.

There do appear to be some actionable statements. First, Plaintiffs allege that Cirella indicated that a $25 million non-refundable investment was being put into South Pacific. This statement does not appear to relate to a future promise because it "was being" made, which indicates that it was in the process of being made when the statement was offered and related to an existing fact. The same is true for the statement that companies were "no risk" because they were "flush with cash." This appears to relate to an existing fact. *See Webb v. First of Michigan Corp.*, 495 N.W.2d 851, 853–54 (Mich. Ct. App. 1992) (finding that statement as to the risk of an investment could be construed as a statement of existing fact). Whether these facts could be independently verified is not before the Court at this stage. *See Id.* (affirming trial court grant of motion for summary disposition as to statement that the investment was "risk free" when there was evidence that the statement could be independently verified). Plaintiffs have not made any allegations that would lead the Court to believe that they could have made a reasonable inquiry into the truth of these statements. At this stage, it is sufficient that Plaintiffs have alleged that they relied on a representation as to an existing fact.

As to Wirth, he alleges that Russo and other Laidlaw employees indicated that a company had no debt and that another company was in the final stages of tests for a drug that would put cancer in remission. These statements do not relate to any future promises nor indicate a level of opinion or exaggeration for the purposes of making a sale. Rather, they appear to relate to a fact existing at the time the statement was made. Whether Wirth could have made an inquiry into the truth of these statements is a factual inquiry that the Court should not make when considering whether the allegations state a claim for relief. Plaintiff Seyburn and Wirth may proceed with their fraud and negligent misrepresentation claims to the extent that they relate to an existing fact.

Plaintiffs contend that their allegations are sufficient under the theory of silent fraud because Defendants suppressed the truth or made partial statements in order to deceive. The doctrine of silent fraud requires a showing that there was a legal or equitable duty to disclose the information allegedly suppressed. *See M&D, Inc. v. McConkey*, 585 N.W.2d 33, 39 (Mich. Ct. App. 1998). Plaintiffs argue that Defendants should have disclosed the nonviability of the investments. However, nowhere in Plaintiffs' Amended Complaint do they allege that Laidlaw or its employees had a duty to disclose information. The Court granted Plaintiffs leave to amend to cure any deficiencies as to its fraud claims. Plaintiffs did not take that opportunity to specifically allege that Defendants had a duty to disclose some information about the investments and that it failed to do so. Plaintiffs' silent fraud claim fails for this reason alone.

### C.     Unjust Enrichment

Defendants argue that Plaintiffs have not adequately pled their claims because Plaintiffs did not allege that Defendants received commissions directly from Plaintiffs. Rather, Plaintiffs

allege that the commissions were received from their investments. The law will imply a contract to prevent unjust enrichment if the defendant received a benefit from the plaintiff and there was inequity as a result of the defendant's retention of the benefit. *Sweet Air Investment, Inc. v. Kenney*, 739 N.W.2d 656, 663 (Mich. Ct. App. 2007). Michigan courts apply the fiction of quasi-contract "with caution" because it "vitiates normal contract principles." *Kammer Asphalt Paving Co. v East China Twp. Schools*, 504 N.W.2d 635, 640 (Mich. 1993). The doctrine is typically applied in cases where the defendant receives a direct benefit from the plaintiff. *A&M Supply Co. v. Microsoft Corp.*, 2008 Mich. App. LEXIS 433, 6–7 (Mich. Ct. App. Feb. 28, 2008) (unpublished) (citing *Bell Isle Grill Corp. v Detroit*, 256 Mich. App. 463, 478 (2003)); *see also New Dimension Dev. v. Orchard*, 2005 Mich. App. LEXIS 2667, 18–19 (Mich. Ct. App. Oct. 27, 2005) (unpublished) (finding that "any indirect benefit defendant derived from plaintiffs was too attenuated to warrant imposing the equitable doctrine of unjust enrichment"); *Martell v. Turchek*, 2008 U.S. Dist. LEXIS 51966, 30 (E.D. Mich. Jul. 2008) (unpublished) ("the defendant must have received a benefit directly from the plaintiff[,] . . . this involves some sort of direct contact between the parties") (citing *A&M Supply Co.*, 2008 Mich. App. LEXIS 433, at 2)).

Plaintiffs alleged that Defendants received commission from their investments. In light of the context, it is reasonable to assume that the commissions were paid from the companies themselves and not directly from the Plaintiffs. Plaintiffs do not allege that they paid commission directly to Defendants or in any other way conferred some direct benefit on Defendants. Although Michigan appears to require some direct connection between the benefit derived and the parties, finding that there was no direct benefit because Plaintiffs did not pay commissions directly to Defendants appears harsh. Defendants would not have received any commission if not for Plaintiffs' decisions to invest. Construing the facts in the light most

favorable to Plaintiffs, the Court finds that a direct connection existed here because commissions were paid *from* Plaintiffs' investments. The unjust enrichment claim is sufficient because the Complaint alleges that Defendants received a benefit *from* Plaintiffs' investments, which were paid directly by Plaintiffs. This connection is not too attenuated to survive a motion to dismiss.

### IV. CONCLUSION

In sum, Plaintiffs' fraud and negligent misrepresentation claims survive consistent with this opinion. The unjust enrichment claims also survive.

Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss Plaintiffs' Amended Complaint [Docket No. 35, filed May 3, 2012] is **GRANTED IN PART**.

**IT IS SO ORDERED**.

                                              S/Denise Page Hood
                                              Denise Page Hood
                                              United States District Judge

Dated: March 28, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 28, 2013, by electronic and/or ordinary mail.

                                              S/LaShawn R. Saulsberry
                                              Case Manager